1    MALHAR S. PAGAY (CA BAR NO. 189289)
     VICTORIA A. NEWMARK (CA BAR NO. 183581)
2    PACHULSKI STANG ZIEHL & JONES LLP
     10100 Santa Monica Blvd., 13th Floor
3    Los Angeles, California  90067
     Telephone: 310/277-6910
4    Facsimile: 310/201-0760
     E-mail:   mpagay@pszjlaw.com
5              vnewmark@pszjlaw.com

6    Attorneys for Wynn Las Vegas, LLC d/b/a Wynn Las Vegas

7

8                    UNITED STATES BANKRUPTCY COURT

                      CENTRAL DISTRICT OF CALIFORNIA
9
                           LOS ANGELES DIVISION

10   In re:                              Case No.: 2:13-bk-15130-SK

11   GGW BRANDS, LLC,                    Chapter 11

12                          Debtor.      **NOTICE OF MOTION AND MOTION
                                         FOR ORDER DIRECTING THE**
13                                       **APPOINTMENT OF A CHAPTER 11
                                         TRUSTEE; MEMORANDUM OF POINTS**
14                                       **AND AUTHORITIES IN SUPPORT
                                         THEREOF**
15
                                         [Application for Order Shortening Time,
16                                       Declaration of Mitchell Langberg, and Request
                                         for Judicial Notice filed concurrently herewith]
17
                                         **Hearing**
18                                       Date:     [To be set]
                                         Time:     [To be set]
19                                       Place:    Courtroom 1575
                                                   255 E. Temple Street
20                                                 Los Angeles, CA  90012

21   **TO THE HONORABLE SANDRA KLEIN, UNITED STATES BANKRUPTCY JUDGE,**

22   **AND ALL PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:**

23           **PLEASE TAKE NOTICE** that Wynn Las Vegas, LLC d/b/a Wynn Las Vegas ("Wynn Las

24   Vegas"), a creditor of GGW Brands, Inc. ("GGW Brands"), GGW Direct, LLC ("GGW Direct"),

25   GGW Events, LLC ("GGW Events") and GGW Magazine, LLC ("GGW Magazine" and,

26   collectively, with GGW Brands, GGW Direct and GGW Events, the "Debtors"), hereby files this

27   *Notice of Motion and Motion for Order Directing the Appointment of a Chapter 11 Trustee* (the

28

1    "Motion"), pursuant to which Wynn Las Vegas seeks the immediate appointment of a chapter 11

2    trustee in the Debtors' bankruptcy cases (collectively, the "Cases").[1]

3        **PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to section

4    1104(a)(1) and (a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the

5    "Bankruptcy Code"), Rules 2007.1(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the

6    "Bankruptcy Rules"), and Rule 9013-1 of the local Bankruptcy Rules of the United States

7    Bankruptcy Court for the Central District of California (the "Local Bankruptcy Rules"), and is based

8    on this Motion, the accompanying memorandum of points and authorities, the Declaration of

9    Mitchell Langberg (the "Langberg Declaration") and Request for Judicial Notice (the "RFJN") filed

10   concurrently herewith, the record in the Cases, the arguments and representations of counsel, any

11   other evidence as may be presented at or prior to the hearing regarding the Motion, and all other

12   matters of which the Court may properly take judicial notice.

13       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h),

14   the failure to timely file and serve a written opposition may be deemed by the Bankruptcy Court to

15   be consent to the granting of the relief requested in the Motion and such relief may be granted

16   without further notice.

17       **WHEREFORE**, Wynn Las Vegas respectfully requests that the Court enter an order:

18   1.    Granting the Motion in its entirety;

19   2.    Directing the appointment of a chapter 11 trustee in the Cases; and

20   3.    Granting Wynn Las Vegas such other and further relief as the Court may deem just

21         and proper under the circumstances.

22
23   Dated: March 21, 2013            PACHULSKI STANG ZIEHL & JONES LLP

24
25                                   By:    */s/ Malhar S. Pagay*
                                           Malhar S. Pagay (CA Bar No. 189289)
26                                         Attorneys for Wynn Las Vegas, LLC d/b/a
                                           Wynn Las Vegas

27
28

___

[1] Because the Cases are not being jointly administered, this Motion is being filed in each of the Cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I. JURISDICTION AND VENUE.......................................................................................1

II. INTRODUCTION.............................................................................................................1

III. STATEMENT OF FACTS ...............................................................................................3

   A.   The Girls Gone Wild Enterprise .............................................................................3

   B.   The Debtors' Liability to Wynn Las Vegas ............................................................4

      1.   The Nevada Marker Judgment .........................................................................4

      2.   The Nevada Defamation Judgment ..................................................................4

      3.   The Alter Ego Finding ......................................................................................4

      4.   California Marker Judgment Collection Proceedings........................................6

      5.   The Commencement of the Debtors' Cases.......................................................7

   C.   The Organizational Structure of the Debtors and Francis's Control .....................7

   D.   Francis's Misuse of Company Funds for His Own Personal Expenses...................8

   E.   Francis's Propensity to Manipulate the Debtors and Divert Their Assets to Avoid
       Liability or to Defeat Court Orders......................................................................11

IV. DISCUSSION...............................................................................................................13

   A.   Ample "Cause" Exists to Require the Appointment of a Trustee under Section 1104(a)(1)14

      1.   Prepetition Misconduct Alone May Establish Cause to Appoint a Trustee....................14

      2.   Francis's Unbridled Control of the Debtors and Use of Corporate Assets ........................
         Prepetition to Fund His Personal Expenses Warrant Appointment of a Trustee.............14

      3.   Francis's Scheme to Transfer the Debtors' Rights to Other Entities Constitutes ...............
         Cause to Mandate the Appointment of a Trustee............................................................16

      4.   Current Management of the Debtors Has Debilitating Conflicts of Interest That ...............
         Warrant the Appointment of a Trustee .........................................................................17

   B.   A Trustee Should Be Appointed in the Interests of Creditors Under Section 1104(a)(2)....18

V. CONCLUSION...............................................................................................................19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>Table of Authorities</u>

**Cases**

*Boineau's, Inc. v. Boineau (In re Boineau's, Inc.),*
  1992 WL 38142 (4th Cir. March 3, 1992) ............................................................14, 15

*Cajun Electric Power Coop. v. Central Louisiana Coop.*
  *(In re Cajun Electric Power Coop.),*
  74 F.3d 599 (5th Cir. 1996) ....................................................................................17

*Committee of Dalkon Shield Claimants v. A.H. Robins,*
  828 F.2d 239 (4th Cir. 1987) ..................................................................................13

*Commodity Futures Trading Commission v. Weintraub,*
  471 U.S. 343, 355 (1985) .......................................................................................17

*Fukutomi v. United States Trustee (In re Bibo, Inc.),*
  76 F.3d 256 (9th Cir. 1996) ....................................................................................14

*In re Bellevue Place Assocs,*
  171 B.R. 615 (Bankr. N.D. .Ill. 1994) ....................................................................17

*In re Bonded Mailings, Inc.,*
  20 B.R. 781 (Bankr. E.D.N.Y. 1982) ......................................................................13

*In re Cardinal Industries, Inc.,*
  109 B.R. 755 (Bankr. S.D. Ohio 1990) ..............................................................18, 19

*In re Colorado-Ute Electric Ass'n,*
  120 B.R. 164 (Bankr. D. Colo. 1990) .................................................................17, 19

*In re Ionosphere Clubs, Inc.,*
  113 B.R. 164 (Bankr. S.D.N.Y. 1990) ............................................................13, 18, 19

*In re Main Line Motors, Inc.,*
  9 B.R. 782 (Bankr. E.D. Va. 1981) .....................................................................14, 15

*In re Marvel Entertainment Group, Inc.,*
  140 F.3d 463 (3rd Cir. 1998) ...........................................................................17, 18, 19

*In re Microwave Products of America, Inc.,*
  102 B.R. 666 (Bankr. W.D. Tenn. 1989 ..................................................14, 15, 17, 18, 19

*In re Professional Accountants Referral Svcs., Inc.,*
  142 B.R. 424 (Bankr. D. Colo. 1992) .....................................................................15

*In re PRS Ins. Group, Inc.,*
  274 B.R. 381 (Bankr. D. Del. 2001) ...................................................................14, 15

*In re Rivermeadows Assoc., Ltd.,*
  185 B.R. 615 (Bankr. D. Wyo. 1995) ......................................................................14

*In re Sharon Steel Corp.,*
  871 F.2d 1217 (3d Cir. 1989) ............................................................................13, 15

*In re SunCruz Casinos, LLC,*
  298 B.R. 821 (Bankr. S.D. Fla. 2003) .....................................................................17

*In re V. Savino Oil & Heating Co., Inc.,*
  99 B.R. 518 (Bankr. E.D.N.Y. 1989) .................................................................13, 14. 16

*In the Matter of Fiesta Homes of Georgia,*
  125 B.R. 321 (Bankr. S.D. Ga. 1990) ......................................................................17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Lowenschuss v. Selnick, (In re Lowenschuss),*
    171 F.3d 673 (9thCir. 1999) .....................................................................................13, 14, 18

*Oklahoma Refining Co. v. Blank (In re Oklahoma Refining Co.),*
    838 F.2d 1133 (10th Cir. 1988) ..........................................................................................13

*Wolf v. Weinstein,*
    372 U.S. 633 (1963).............................................................................................................17

## Statutes

11 U.S.C. § 1104(a) .....................................................................................1, 13, 14, 16, 18

28 U.S.C. § 157 ..............................................................................................................................1

28 U.S.C. § 1334 ...........................................................................................................................1

28 U.S.C. § 1408 ...........................................................................................................................1

28 U.S.C. § 1409 ...........................................................................................................................1

## Rules

Fed. R. Bankr. P. 2007.1 ..............................................................................................................1

Fed. R. Bankr. P. 9014..................................................................................................................1

## Other Authorities

7 *Collier on Bankruptcy* ¶ 1104.02[d] (16th ed. 2013).................................................................13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The statutory predicates for the relief sought herein are section 1104(a)(1) and (a)(2) of the Bankruptcy Code and Bankruptcy Rules 2007.1(a) and 9014.

## II.

## INTRODUCTION

The debtor in this case and those in three related cases all are part of the Girls Gone Wild "empire" of Joseph Francis ("Francis").  Girls Gone Wild "is an adult entertainment company" known for videos that "typically involve camera crews at party locations engaging young college aged women who willingly expose their bodies or act 'wild.'"[2]

For more than the past year, the Debtors have caused substantial funds to be paid to Francis. This was not done by means of paying directly to Francis a salary or consulting fee or any other manner of cash payments.  Instead, as part of a scheme to allow Francis to avoid his creditors, the Debtors utilized corporate assets to pay all or substantially all of his personal expenses, including his mortgage, personal American Express bills, and hundreds of thousands of dollars of his legal fees on personal matters in which the Debtors had no business interest.

Remarkably, the Debtors made these "distributions" to Francis even though, on paper, Francis had no ownership interest in the Debtors and was not their employee.  The Debtors were ultimately owned by a foreign trust (formed in the Cook Islands) for which Francis is the settlor and is one of the beneficiaries.  But, that trust was never intended to receive any distributions from the various entities it owns.  As of early last year, no money had ever been distributed to the trust—all of it going to Francis who, until late last year, was the manager of the Debtors.  Francis's management role at the Debtors was only changed—on paper—when it was strategically advantageous to Francis to do so.  Late last year, Christopher Dale ("Dale"), the individual who signed the Debtors'

---

[2] *See* http://en.wikipedia.org/wiki/Girls_Gone_Wild_(franchise)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   bankruptcy petitions, was installed as the new manager.  Just months prior to the commencement of

2   the Debtors' cases, Dale testified that he was the human resources director at the Girls Gone Wild

3   companies and that he knew nothing about their finances, daily operations, and relationship with

4   Francis outside of that role.

5          Two different courts, one in Nevada and one in California, have examined the facts

6   pertaining to the manner in which the Debtors are operated and their relationship with Francis.  Both

7   courts have made preliminary determinations that the evidence reflects an improper relationship

8   between Francis and these companies, notwithstanding their efforts to hide that relationship through

9   the Debtors' financial arrangements and the use of figurehead managers, such as Dale.  Indeed, on

10  much the same evidence as is presented here, a state court in Nevada has determined that there is a

11  substantial likelihood that Wynn Las Vegas will prevail on its claims that the Debtors are Francis's

12  alter-egos.[3]  Similarly, a state court in California has just determined that a limited receiver should

13  be appointed to review the books and records of the companies and to determine what income of

14  Francis has been hidden through the Debtors' businesses.[4]

15         The diversion of the Debtors' assets to satisfy Francis's personal obligations and the Debtors'

16  use of "puppet" management to ensure that the Debtors' funds will continue to be funneled to

17  Francis to support his lifestyle demonstrate the complete abandonment of the Debtors' fiduciary

18  responsibilities to creditors.  Simply stated, Francis has used the Debtors as his personal "piggy

19  bank".  Francis's self-dealing has been at the expense of the Debtors and their creditors and, through

20  his de facto control over the Debtors, Francis has misused the funds of the Debtors for his benefit.

21  Under these circumstances, the Debtors remaining as debtors in possession would be antithetical to

22  the interests of creditors and the appointment of a chapter 11 trustee is mandated.[5]

23

24

---

25  [3] See Preliminary Injunction, *Wynn Las Vegas LLC d/b/a Wynn Las Vegas v. GGW Direct, LLC, et al.* (District Court,
    Clark County, NV; Case No.:  A-12-660288-B), a true copy of which is attached to the RFJN as Exhibit A.

26  [4] See Order Appointing Limited Receiver, a true copy of which is attached to the RFJN as Exhibit B.

27  [5] As of the filing of this Motion, none of the Debtors has filed any "first day" or other motions in their cases seeking
    typical relief from the Court to ensure the post-petition continuity of their business activities.  This begs the question of
28  whether, prior to the commencement of these Cases, the Debtors' employees and operations have been spirited away to
    other entities controlled by Francis.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## <u>STATEMENT OF FACTS</u>

**A.**    **The Girls Gone Wild Enterprise**

According to the www.girlsgonewild.com web-site, GGW Direct "offers products and services to adult consumers" including a "monthly program" and other products and services provided on an "interactive online service operated by GGW Direct and/or its affiliates."[6]  The website states:  "Since 2008, the Girls Gone Wild (GGW) products have been sold primarily through their website as streaming videos, downloads, and DVDs."[7]  It also advises that information regarding Girls Gone Wild can be obtained from GGW Brands and from an entity identified as "Trebax Marketing Limited.  EU Corp.  133 Grigori Afxentiou, Ag. Dometios, 2369 Nicosia, Cyprus."[8]  The custodian of records for "Girls Gone Wild" is indicated to be located at 7120 Carlson Circle, Unit 263, Canoga Park, California  91303.[9]

The GirlsGoneWild.com website has a link to a website entitled MeetJoeFrancis.com, which provides additional information about the Debtors' enterprise and Francis's relationship to it.  Among other information, the website (i) describes Girls Gone Wild as "a $100 million company";[10] (ii) mentions that "Girls Gone Wild acquired two million-dollar tour buses";[11] (iii) states that "[b]ars, clubs and entertainment venues across the country are eager to book Girls Gone Wild events for the crowds [they] bring[] in, providing yet another revenue stream for Girls Gone Wild";[12] (iv) reveals the existence of a "corporate retreat in Puerto Vallarta, Mexico, to serve the expanding needs of his company" and which "serves as a shooting location for infomercials, making it a valuable asset to the company and an excellent investment, much like the Playboy Mansion."[13]; (v) discusses additional business lines, such as a "Girls Gone Wild clothing line" and "lifestyle entertainment products. . . distributed to audiences worldwide";[14] (vi) notes that "[i]n 2008 Francis launched Girls

---

[6] *See*  http://www.girlsgonewild.com/info/privacy/
[7] *See*  http://en.wikipedia.org/wiki/Girls_Gone_Wild_(franchise)
[8] *See* http://www.girlsgonewild.com/info/contactus/
[9] *Id.*
[10] *See* http://www.meetjoefrancis.com/business-biography-page-1/
[11] *See* http://www.meetjoefrancis.com/business-biography-page-2/
[12] *Id.*
[13] *Id.*
[14] *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Gone Wild Magazine";[15] and (vii) confirms that it is Francis who is "overseeing this diverse business organization."[16]

**B.    The Debtors' Liability to Wynn Las Vegas**

      **1.    The Nevada Marker Judgment**

On June 18, 2009, Wynn Las Vegas obtained a judgment against Francis in the District Court of Clark County, Nevada, arising from unpaid gambling debts (the "Nevada Marker Judgment").[17] The court awarded Wynn Las Vegas $2 million plus prejudgment interest of $838,356.00 and postjudgment interest accruing at the rate of $986.30 per day.  As of February 13, 2013, Wynn Las Vegas is owed $3,923,597.23 on account of the Nevada Marker Judgment.[18]  The Nevada Marker Judgment is a final, nonappealable order.[19]

      **2.    The Nevada Defamation Judgment**

On April 9, 2012, Wynn Las Vegas obtained a judgment against Francis in the District Court of Clark County, Nevada, on account of claims of defamation (the "Nevada Defamation Judgment").[20]  The court awarded Wynn Las Vegas $7.5 million, consisting of $5.0 million in compensatory damages and $2.5 million in punitive damages.[21]  As of February 13, 2013, Wynn Las Vegas is owed $8,164,340.12 on account of the Nevada Defamation Judgment.[22]  The court denied Francis's motion to set aside the Nevada Defamation Judgment entered by default and Francis has appealed the court's denial of such motion.

      **3.    The Alter Ego Finding**

On April 18, 2012, Wynn Las Vegas commenced an action in the District Court for Clark County, Nevada, against GGW Direct, GGW Brands, GGW Events, Francis, and certain other individuals and entities (the "Alter Ego Litigation"), in which Wynn Las Vegas alleges, among other things, that:

---

[15] *Id.*
[16] *Id.*
[17] A true and correct copy of the Nevada Marker Judgment is attached to the RFJN as Exhibit C.
[18] Langberg Decl. ¶ 3.
[19] Langberg Decl. ¶ 3.
[20] A true and correct copy of the Nevada Defamation Judgment is attached to the RFJN as Exhibit D.
[21] Langberg Decl. ¶ 4.  Stephen Wynn also was awarded identical amounts by the court pursuant to the Nevada Defamation Judgment.
[22] Langberg Decl. ¶ 4.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

. . . . Wynn has been largely unable to collect on its Judgment against Francis because Francis is using the GGW Entities to hide his assets and income.

. . . . Specifically, Francis uses the GGW Entities' funds to pay his personal expenses in order to prevent Wynn from collecting its Judgment.

. . . . Francis is the chief financial officer of some or all of the GGW Entities.

. . . . Francis exercises complete dominion and control over the GGW Entities.

. . . . The GGW Entities are influenced and governed by Francis, and Francis acts as the ultimate authority for their business and financial transactions.

. . . . Francis commingles his personal funds with the funds of the GGW Entities and makes unauthorized diversions of funds from the GGW Entities for his personal use.

. . . . That is, Francis causes the GGW Entities to pay some or all of his personal expenses from the GGW Entities' accounts.

. . . . Upon information and belief, the GGW Entities fail to comply with corporate formalities required by law.[23]

On August 17, 2012, the court issued a Preliminary Injunction in the Alter Ego Litigation (the "Alter Ego Injunction") barring the defendants from transferring funds of GGW Direct, including $1,846,578.28 held in an attorney's trust account because "in the absence of such relief, one or more of the defendants is likely to transfer GGW Direct's assets out of the State of Nevada."[24] The court found that Wynn Las Vegas:

has a substantial likelihood of success on the merits of its claim for declaratory relief related to alter ego. . . and has presented evidence that:

(a) Francis uses GGW Direct, LLC as a shield from liability by commingling his personal funds with those of GGW Direct;

(b) Francis uses the funds of GGW Direct to pay his personal expenses;

(c) Francis is abusing the business entity form to frustrate creditors. . . ;

---

[23] Complaint, *Wynn Las Vegas LLC d/b/a Wynn Las Vegas v. GGW Direct, LLC, et al.* (District Court, Clark County, NV; Case No.: A-12-660288-B) ¶¶ 19-26 at 3-4. A true copy of the Complaint is attached to the RFJN as Exhibit E.

[24] Preliminary Injunction, *Wynn Las Vegas LLC d/b/a Wynn Las Vegas v. GGW Direct, LLC, et al.* (District Court, Clark County, NV; Case No.: A-12-660288-B) ¶ 1 at 1 (RFJN, Exhibit A).

(d)    As the person most knowledgeable of the day to day operations of GGW Direct and the sole signatory on checks issued by GGW Direct, Francis likely controls GGW Direct's operations;

(e)    There is such unity of interest between GGW Direct and Francis such that GGW Direct is the alter ego of Francis; and

(f)    In this instance, to recognize the business entity form would work an injustice on Francis' creditors, including Wynn [Las Vegas][25]

4.    **California Marker Judgment Collection Proceedings**

On October 2, 2009, Wynn Las Vegas filed a *Judgment Based on Sister-State Judgment* in the Superior Court of the State of California for the County of Los Angeles, thereby registering the Nevada Marker Judgment in the State of California and commencing case number BS123009 (the "California Marker Judgment Litigation").  On November 16, 2012, Wynn Las Vegas filed a *Motion for Appointment of Limited Receiver* in the California Marker Judgment Litigation (the "Limited Receiver Motion"), requesting that the court appoint a limited receiver

(1) to demand, enforce, collect, and receive all earnings by, and/or any entitlement to compensation (collectively, "earnings"), earned or owed to. . . Francis. . . from any and all sources, including but not limited to [the Debtors] (together the "GGW Entities"); (2) to enter upon the business premises of the GGW Entities and to receive, review and reconcile the books and records of the GGW Entities for the purpose of determining the earnings of Francis; and (3) to take possession of all books and records of Francis and the GGW Entities to enable the receiver to collect the earnings of Francis,[26] . . . .

On March 5, 2013, the court entered its *Order Appointing Limited Receiver in Aid of Execution to Enforce Judgment* (the "Limited Receiver Order"), appointing Jay D. Adkisson as the limited receiver and giving the receiver the powers requested in the Limited Receiver Motion, including, in addition to those noted above, the power to contact each of the accounts receivable holders of the Debtors relating to Francis, and enjoining Francis, the Debtors and their agents, representatives, employees and others from interfering with the receiver or collecting accounts receivable of Francis and of the Debtors relating to Francis or transferring or hypothecating assets of Francis and of the Debtors relating to Francis.[27]

---

[25] *Id.* ¶ 2 at 2-3.

[26] Limited Receiver Motion at 1.  A true and correct copy of the Limited Receiver Motion is attached  to the RFJN as Exhibit F.

[27] A true and correct copy of the Limited Receiver Order is attached to the RFJN as Exhibit B.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.      **The Commencement of the Debtors' Cases**

On February 27, 2013, each of the Debtors filed voluntary chapter 11 petitions in this Court. Each of the Debtors, in its *List of Creditors Holding 20 Largest Unsecured Claims*, identifies Wynn Las Vegas as the holder of an unliquidated and disputed (or, in the case of GGW Brands, just disputed) general unsecured claim in the amount of $10.3 million.[28]

C.    **The Organizational Structure of the Debtors and Francis's Control**

In connection with the Alter Ego Litigation, Wynn Las Vegas conducted the equivalent of a Federal Rule of Civil Procedure 30(b)(6) deposition on the person designated by GGW Brands and GGW Direct to testify regarding their structure and their relationship with Francis.[29]  The companies designated Robert Klueger ("Klueger"), former counsel to the Debtors.

Klueger admitted that Francis personally hired him to represent the Debtors.[30]  Klueger testified that GGW Direct is an operating company that produces videos, whereas GGW Brands is a holding company that owns GGW Direct, as well as the two other Debtors, GGW Events and GGW Magazine.[31]  GGW Brands is the sole member of each of the subsidiary Debtors.[32]  GGW Brands has a single member, Pablo Holdings ("Pablo Holdings"), an overseas limited liability company located in Nevis & St. Kitts.[33]  At the time, Pablo Holdings was managed by Francis and its sole member was the Ridgewood Global Trust, established under the laws of the Cook Islands.[34]  The settlor of the Ridgewood Global Trust is Francis, who also may be one of the beneficiaries of that trust.[35]  Ultimately, as Klueger confirmed, as a manager of Pablo Holdings, Francis exercised direct control over all the Debtors.[36]

Klueger provided additional evidence of Francis's de facto control over the Debtors.  At his

[28] Also, the Debtors list Wynn Las Vegas on each of their respective *Schedule F*'s as the holder of an unliquidated and disputed general unsecured claim in the amount of $10.3 million.

[29] Langberg Decl. ¶ 6.

[30] Langberg Decl., Ex. A, Deposition of Robert Klueger, June 22, 2012 ("First Klueger Depo."), 14:9-13.

[31] Langberg Decl., Ex. A , First Klueger Depo., 26:19-25.

[32] Langberg Decl., Ex. A , First Klueger Depo., 27:10-12.

[33] Langberg Decl., Ex. A, First Klueger Depo., 27:25-28:6.

[34] Langberg Decl., Ex. A, First Klueger Depo., 28:11-17.

[35] Langberg Decl., Ex. A , First Klueger Depo., 29:10-22.

[36] Langberg Decl., Ex. B, Deposition of Robert Klueger, August 28, 2012 ("Second Klueger Depo."), 75:15-25.

1   depositions, Klueger confirmed that Francis was in charge of the company's main function, which he

2   described as the production of intellectual property.[37]  Klueger testified that Francis hired executive

3   Kevin Westberg and terminated his predecessor.[38]  Klueger also stated that Francis had the ultimate

4   authority to approve the banking relationships into which the Debtors would enter.[39]  Simply put,

5   Klueger confirms that Francis is "the ultimate sole owner" of the Debtors.[40]

6       In his deposition in the Alter Ego Litigation, Dale—the individual now being held out as the

7   "Manager" of the Debtors and the person signing the bankruptcy petitions, schedules and statements

8   of financial affairs on the Debtors' behalf—also confirmed Francis's control and authority at the

9   companies.  Dale acknowledged that Francis could direct him to "fire anybody he wanted to."[41]

10  Dale also revealed that Francis had at one time received W-2s from GGW Direct, and that it is

11  Francis's signature on all the paychecks for the Debtors.[42]

12      The companies' former attorney, Brian Rayment, corroborates other evidence confirming

13  Francis's control.  Rayment explained that he served somewhat as an outside general counsel to the

14  various GGW entities.[43]  He understood Francis to be the manager of GGW Brands.[44]  Rayment

15  reaffirms Francis was the person in charge for all of the entities.[45]

16      Though the Debtors and parent entities are structured in a manner to confuse and frustrate

17  creditors, prior testimony obtained by Wynn Las Vegas confirms the Debtors are ultimately under

18  the sole control of Francis.

19  **D.    Francis's Misuse of Company Funds for His Own Personal Expenses**

20      As discussed above, to the best of Wynn Las Vegas's knowledge, Francis has no official

21  individual ownership of the Debtors.  The ultimate owner on paper is the Ridgewood Global Trust.

---

22  [37] Langberg Decl., Ex. A, First Klueger Depo., 135:8-11.

23  [38] Langberg Decl., Ex. A, First Klueger Depo., 50:21-51:3.

24  [39] Langberg Decl., Ex. A, First Klueger Depo., 21:24-22:20.

25  [40] Langberg Decl., Ex. B, Second Klueger Depo., 31:14-23.

    [41] Langberg Decl., Ex. C, Deposition of Christopher Dale ("Dale Depo."), August 29, 2012, 38:17-19.

26  [42] Langberg Decl., Ex. C, Dale Depo., 57:16-58:4, 93:3-8.

27  [43] Langberg Decl., Ex. D, Deposition of Brian Rayment ("Rayment Depo."), June 29, 2012, 14:22-15:3, 58:7-10.

    [44] Langberg Decl., Ex. D, Rayment Depo., 118:10-17.

28  [45] Langberg Decl., Ex. D, Rayment Depo., 85:12-86:13.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

However, Ridgewood Global Trust has never received any distributions from its subsidiaries since the time it was formed.[46]

Instead, distributions are made to Francis through what Klueger referred to as a "notional" salary of at least $50,000 per month.[47] As Klueger explained, Francis "would run up credit card bills, and the entities would directly pay his credit card bills or other similar personal expenses," regularly exceeding the set amount.[48] The personal expenses were added up at the end of the year and Francis would pay taxes on account of them.[49] Significantly, there was no control over Francis's "compensation," because Francis determined his compensation based on what he chose to spend; his compensation was in no way tied to what he did for the Debtors or how many hours he worked each month.[50]

Thus, the only limit as to the amount of funds Francis could divert from the Debtors was the financial wherewithal of the enterprise.[51] As Klueger testified: "Mr. Francis is subject to the profits, the net profits, of the entities whether they're distributed or not. So there's no need to distribute it. I mean, if there is a net profit, it's allocated to him and reported on his taxes."[52] After all, Francis is "the ultimate sole owner" of the Debtors and thus "there is no one who could have vetoed an item of compensation."[53]

Klueger noted, "[u]ltimately, Mr. Francis has to pick up the income of these entities, the net income whether they are distributed to him or not."[54] The structure set up by Francis allows him to

---

[46] Langberg Decl., Ex. B, Second Klueger Depo. 67:2–6.

[47] Langberg Decl., Ex. A, First Klueger Depo. 80:5-25.

[48] Langberg Decl., Ex. B, Second Klueger Depo. 10:2–14. In fact, Klueger testified that while the limit for this was the notional amount of $50,000 per month, Francis would regularly exceed this so-called limit. Langberg Decl. Ex. B, Second Klueger Depo. 14:22-15:2.

[49] Langberg Decl., Ex. A, First Klueger Depo. 78:6-79:4. Presumably, because Francis claims to have no sources of income, these tax payments were made by one or more of the GGW entities.

[50] Langberg Decl., Ex. B, Second Klueger Depo. 30:7–14.

[51] Langberg Decl., Ex. B, Second Klueger Depo. 31:6–9.

[52] Langberg Decl., Ex. B, Second Klueger Depo. 17:9–18.

[53] Langberg Decl., Ex. B, Second Klueger Depo. 30:7–14, 31:14–23.

[54] Langberg Decl., Ex. A, First Klueger Depo., 77:16-18.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  simply use the assets of the Debtors to pay his personal obligations. As the person ultimately in

2  charge, nothing has prevented him from taking as much as he needs or wants.

3  An examination of limited credit card bills obtained in discovery in other actions confirms

4  that the Debtors are paying for Francis's personal expenses. For example, in November 2011,

5  Francis had a balance of $38,441.59 on an American Express credit card under Francis's name.[55]

6  The bill reveals thousands of dollars spent on medical expenses, clothes, and groceries. In a ledger

7  produced by the Debtors as part of the Alter Ego Litigation, GGW Direct paid this bill, but

8  referenced it in company records as a "Blue Horse" transaction.[56]

9  The use of the Debtors' funds for Francis's own personal interest includes the payment of

10  substantial legal fees for wholly personal matters. His practice of diverting company money for

11  personal legal expenses is long-standing. David Houston, a personal friend of Francis,[57] acts as

12  Francis's "consulting attorney" on various matters and sometimes as his counsel of record.[58]

13  Houston has provided legal services to Francis in relation to numerous personal matters.[59] In 2011,

14  and continuing into 2012, GGW Direct began paying Houston's bills.[60] Francis was the signatory on

15  every single check that GGW Direct sent to Houston.[61]

16  From mid-2010 to late 2011, Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor

17  represented Francis in a variety of personal matters and some of his entities on others.[62] GGW

18  Direct began making the payments to Liner Grode in December 2010, even though Liner Grode did

---

[55] Langberg Decl., Ex. E.

[56] Langberg Decl., Ex. F. Klueger testified that Blue Horse "holds his [Francis's] personal assets." Langberg Decl., Ex. A, First Klueger Depo., 91:8-10.

[57] Houston does not have a current engagement letter in place for services provided either to Francis or the Debtors, instead operating under a "gentleman's agreement." Langberg Decl., Ex. G , Examination of David R. Houston, April 3, 2012 ("Houston Exam"), 22:2-18.

[58] Langberg Decl., Ex. G, Houston Exam, 9:3-8.

[59] Those personal matters include representing Francis in conjunction with child pornography charges in Florida, representing Francis in conjunction with a criminal tax case, representing Francis in attempting to get yet another defamation judgment, this one in Nevada, reversed and with regard to criminal charges related to his unpaid gaming marker. Langberg Decl. Ex. G, Houston Exam, 7:1-6, 9:11-11:18, 23:4-14.

[60] Langberg Decl., Ex. G, Houston Exam, Ex. 1-2 to Houston Exam.

[61] Langberg Decl., Ex. G, Houston Exam, Ex. 1-5 to Houston Exam.

[62] Langberg Decl., Ex. H, Examination of Peter E. Garrell, April 2, 2012 ("Garrell Exam"), 84:11-20, 86:6-87:13, 92:1-7.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    not begin representing GGW Direct until the summer or fall of 2011.[63]  While Francis did not make

2    a single payment to Liner Grode, GGW Direct and another of Francis's companies, Pepe Bus, made

3    payments of over $270,000.00.[64]  Again, Francis signed every check from both of these entities.[65]

4          Perhaps the most glaring and recent example of Francis's use of company funds for his

5    personal legal expenses is the work performed by attorney Aaron Aftergood ("Aftergood").  During

6    2012, Aftergood represented Francis in the California Marker Judgment Litigation.[66]  Additionally,

7    throughout 2012, Aftergood represented Francis in a defamation case Stephen Wynn brought against

8    Francis that resulted in a $19 million judgment against Francis, which included a nearly two week

9    trial and post-trial motions.[67]  Both of these matters are uniquely personal to Francis.  Aftergood also

10   testified in deposition about a host of other matters in which he represented Francis, personally.[68]

11   For each of these matters, Aftergood was not paid by Francis.  Instead, he was paid by one of the

12   Debtors.[69]

13         Preliminarily, recent filings in this Court appear to corroborate that the Debtors continued to

14   pay Francis's personal expenses up until the bankruptcy filing.  For instance, GGW Direct's

15   *Statement of Financial Affairs* reveals that a total of approximately $283,000 has been paid to

16   American Express within ninety days of the bankruptcy filing, as well as more than $300,000 of fees

17   of various law firms, suggesting that GGW Direct is still paying Francis's credit cards and possibly

18   his legal bills.  *See Statement of Financial Affairs of GGW Direct*, at Attachment 3b.

19   **E.    Francis's Propensity to Manipulate the Debtors and Divert Their Assets to Avoid**

20          **Liability or to Defeat Court Orders**

21         On April 18, 2012, Wynn Las Vegas commenced the Alter Ego Litigation.[70]  The court first

22   issued a temporary restraining order freezing nearly $2 million of funds claimed to belong to GGW

---

23   [63] Langberg Decl., Ex. H, Garrell Exam, 104:1-20 and Ex. 1.

24   [64] Langberg Decl., Ex. H, Garrell Exam, Ex. 1.

25   [65] Langberg Decl., Ex. H, Garrell Exam, Ex. 1.

     [66] Langberg Decl. ¶ 13.

26   [67] Langberg Decl, ¶ 13.

27   [68] Langberg Decl. Ex. I, Aftergood Exam, 16:23 – 17:10.

     [69] Langberg Decl. Ex. I, Aftergood Exam, 10:15-23; 27:17-28:7; 27:11-13; 32:12-19; 36:7 – 37:5.

28   [70] Langberg Decl. ¶ 5.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Brands and/or GGW Direct which were held in David Houston's client trust account.[71]  On July 20, 2012, after finding that Wynn Las Vegas had demonstrated a substantial likelihood of prevailing on its alter ego claims, the Nevada court issued the Alter Ego Injunction, continuing to freeze the funds held by Houston.[72]  Apparently reading the "writing on the wall," five days later, on July 25, 2012, Francis sent an agreement through his assistant to DirecTV, one of the broadcasters of Girls Gone Wild content, attempting to switch the identity of the licensor from one of the Debtors—GGW Direct—to another company known as "Argyle Media Sales, LLC."[73]  The email chain reflects that DirecTV balked at the change as raising "red flags" and Francis, personally, relented.[74]  Though his scheme failed, it is clear that Francis was attempting to move assets (and income flow) out of the companies (now the Debtors) to avoid any liability.

On November 15, 2012, Wynn Las Vegas filed a motion for summary judgment in the Alter Ego Litigation, based in large part on Francis's control of and financial dealings with the Debtors.[75]  On November 16, 2012, in the California Marker Judgment Litigation, Wynn Las Vegas filed its Limited Receiver Motion based on the same grounds.  Three days later, the sole member of Pablo

This manipulation of the Debtors for Francis's purposes is not an isolated incident.  As explained above, the Debtors' sole member is Pablo Holdings.  Until late last year, Francis was the manager of Pablo Holdings, and therefore, Francis managed the Debtors.  However, in order to avoid impending court orders, the Debtors' management was changed in November of last year.

---

[71] Langberg Decl. ¶ 5.

[72] Langberg Decl. ¶ 5.

[73] Langberg Decl., Ex. J.  Argyle Media Sales, LLC, appears to be a (now canceled) California limited liability company which is registered with the Secretary of State under the address of an attorney who represents Francis, Ronald Tym ("Tym").  In addition, according to the *Statement of Financial Affairs* of GGW Direct, GGW Direct made payments totaling approximately $274,000 to an entity called "Argyle Online" and one payment of approximately $65,000 to an entity called "Kiki Entertainment."  *See Statement of Financial Affairs of GGW Direct*, at Attachment 3b.  According to the registrar for the Secretary of State of California, both of these entities were formed in January 2013 and are also registered under Tym's address.

[74] The email chain between Francis and DirecTV also proves the extent to which GGW Direct is willing to protect Francis.  On October 3, 2012, GGW Direct provided, in the Alter Ego Litigation, a certification under penalty of perjury that it had produced all documents responsive to various requests for production.  Langberg Decl., Ex. K.  These requests specifically demanded the production of Francis-related documents, including communications with vendors, emails indicating Francis was not just a "creative consultant," and emails reflecting Francis exerting decision-making authority.  Langberg Decl., Ex. K, Second Set of Requests for Production, Nos. 4, 10, 11.  None of the emails between DirecTV and Francis were produced by GGW Direct.  It was Dale who signed the certification on behalf of GGW Direct.

[75] Langberg Decl. ¶ 5.

Holdings, the Cook Island trust, appointed Dale—previously merely the human resources director—as the manager of Pablo Holdings to put him in control of all management, including financial management, of the Debtors.[76]

## IV.

## DISCUSSION

The appointment of a chapter 11 trustee is governed by section 1104(a) of the Bankruptcy Code, which provides:

> (a)     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the Court **shall order** the appointment of a trustee –
>
> (1)     **For cause**, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, **either before or after the commencement of the case**, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2)     If such appointment is **in the interests of creditors**, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.[77]

The determination of "cause" under saction 1104(a)(1) is within the discretion of the court.[78]    If the court finds "cause," then appointment of a trustee is **mandatory**.[79]

Section 1104(a)(2) allows appointment of a trustee even when no "cause" exists.[80]    Under this provision, the court may appoint a trustee, in its discretion, to address "the interests of the creditors, any equity security holders, and other interests of the estate."[81]

---

[76] *See* Supplemental Declaration of Christopher Dale, dated December 21, 2012, Langberg Decl., Ex. L, ¶ 4 and Exhibits D-1 and D-2.

[77] *See* 11 U.S.C. § 1104(a) (emphasis added).

[78] *Lowenschuss v. Selnick, (In re Lowenschuss)*, 171 F.3d 673, 685 (9thCir. 1999); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989).

[79] *Oklahoma Refining Co. v. Blank (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); *In re Bonded Mailings, Inc.*, 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982).

[80] *Sharon Steel*,  871 F.2d at 1226; *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); 7 *Collier on Bankruptcy* ¶ 1104.02[d] (16th ed. 2013).

[81] 11 U.S.C. § 1104(a)(2);  *See, e.g., Sharon Steel*, 871 F.2d at 1226; *Committee of Dalkon Shield Claimants v. A..H. Robins*, 828 F.2d 239, 242 (4th Cir. 1987).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A.    **Ample "Cause" Exists to Require the Appointment of a Trustee under Section 1104(a)(1)**

1.    **Prepetition Misconduct Alone May Establish Cause to Appoint a Trustee**

As the plain language of section 1104(a)(1) makes clear, prepetition conduct alone is sufficient to warrant the appointment of a trustee.[82]

2.    **Francis's Unbridled Control of the Debtors and Use of Corporate Assets Prepetition to Fund His Personal Expenses Warrant Appointment of a Trustee**

"Cause" to appoint a trustee is often found based on squandering the debtor's assets to pay amounts to a corporate insider.[83]

For example, in *In re Bibo, Inc.*, witness testimony established that the indirect owner of the debtor had been siphoning money away from the debtor by means of a kickback scheme, wherein the owner hired a firm to manage the debtor's property for twice the market value of the services in exchange for an agreement that the management company would pay the owner half of the fees.  The court upheld the lower courts' decision to appoint a trustee.  In finding that the court's decision would be upheld notwithstanding the fact that the motion was heard without having given the debtor written notice, the court reasoned that courts have the discretion to limit hearings on trustee motions and that in the instant case:  "One critical circumstance was that he was in possession of the estate, and another was that he was fraudulently looting it.  As the judge explained, there was a threat to the estate if he could walk out the courtroom door and still be in control of it."[84]

In *In re PRS Ins. Group, Inc.*,[85] an accounting report of the debtor detailed transfers of $32 million to the trust of the debtor's president, sole director and sole shareholder, and to his other

---

[82] *See* 11 U.S.C. § 1104(a)(1) (the relevant "cause" for appointment of a trustee may exist "either before or after the commencement of the case"); *In re Lowenschuss*, 171 F.3d at 685 (holding that prepetition transfers of assets, attempts to avoid jurisdiction of Pennsylvania courts, and control over certain estate assets were good cause to appoint a trustee); *In re Rivermeadows Assoc., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995); *see also V. Savino*, 99 B.R. at 526 ("[t]his prepetition course of conduct, in and of itself, mandates the appointment of a trustee.").

[83] *See Fukutomi v. United States Trustee (In re Bibo, Inc.)*, 76 F.3d 256 (9th Cir. 1996); *see also In re Microwave Products of America, Inc.*, 102 B.R. 666 (Bankr. W.D. Tenn. 1989); *In re Main Line Motors, Inc.*, 9 B.R. 782, 784 (Bankr. E.D. Va. 1981); *Boineau's, Inc. v. Boineau (In re Boineau's, Inc.)*, 1992 WL 38142 (4th Cir. March 3, 1992) (unpublished decision).

[84] *Bibo*, 76 F.3d 256, 259 (9th Cir. 1996).

[85] 274 B.R. 381 (Bankr. D. Del. 2001).

1   companies.  Also, $3.5 million was transferred to pay the principal's personal expenses.  Further, the

2   evidence established that while the principal was using his control of the debtor to strip it of its

3   assets, he also failed in his duties by allowing the confiscation of other assets by a third party.[86]

4       Similarly, in *In re Boineau's, Inc.*, testimony revealed that, prior to the commencement of the

5   bankruptcy case, the debtor's operations manager was, among other actions, paying inexperienced

6   personnel excessive salaries and allegedly placed his mistress on the corporate payroll at an annual

7   salary of  approximately $50,000 for virtually no benefit to the corporation.  In addition, basic

8   financial records had not been kept or were missing, and the manager had removed financial

9   documents from the company's offices to avoid examination by an accountant, in violation of a court

10  order.  The court affirmed, in an unpublished *per curiam* decision, the order to appoint a trustee,

11  stating that "the record is replete with uncontradicted examples of gross mismanagement in the

12  affairs of the debtor" and that "[t]he evidence of … squandering corporate assets, hiding corporate

13  records, and wrecking the business is plain and uncontradicted."[87]

14      As explained at length in *Microwave Products of America*, management may not remain in

15  place where insiders have been permitted to control a debtor to further their own private interests or

16  otherwise exploit their position.[88]    In that case, a trustee was appointed based on attempts by board

17  members to structure deals to repay obligations to them on terms more favorable than those offered

18  to other creditors.[89]

19      The cases are clear that management may not remain in place where, as here, an insider has

20  systematically looted the debtor's assets.  As one bankruptcy court has noted:

21  ―――――――――――――

[86] *Id.* at 390.

22  [87] *Boineau's*, 1992 WL 38142 at *3-*4 (4th Cir.).

23  [88] 102 B.R. at 672.

24  [89] *Id.*; *see also Sharon Steel*, 871 F.2d at 1228 (systematic diversion of debtor's assets to other companies under
    shareholder's common control constituted cause for appointment of trustee); *In re Professional Accountants Referral

25  Svcs., Inc.*, 142 B.R. 424, 428-29 (Bankr. D. Colo. 1992) (diversion of corporate assets for professional use constitutes
    dishonesty or gross mismanagement which required the appointment of a trustee); *In re Colby Constr., Inc.*, 51 B.R. 113,

26  116 (Bankr. S.D.N.Y. 1985) (majority shareholder's "deliberate and unabashed conversion of corporate assets to acquire
    another company in his own name indicates the scienter implicit in fraud as that term is used in § 1104(a)(1) or at least

27  the dishonesty contemplated by that section"); *In re Main Line Motors, Inc.*, 9 B.R. 782, 784 (Bankr. E.D. Va. 1981)
    (cause under § 1104(a)(1) exists to appoint a trustee, where the president and sole shareholders of the debtor had

28  withdrawn substantial sums from the debtor's operation, and placed them in control of two nondebtor affiliates over
    which the owner had control).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee.  And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee.[90]

These Cases offer another textbook example of an insider having and utilizing total control over debtors for his own benefit and warrant the appointment of a trustee.  It is well-established that Francis historically has used the Debtors as his personal "piggy bank" as part of a scheme to hide his assets from his creditors, and has continued to do so irrespective of the recent appointment of Dale as "manager".  The naming of Dale as a figurehead manager over the Debtors—who, until the alleged appointment, worked in the Debtors' human resources department—was orchestrated by Francis precisely because it ensured the continuation of a total absence of any checks against Francis's control over the Debtors' finances and other affairs.  Dale's appointment on the eve of the hearing regarding Wynn Las Vegas's request for an injunction in the Alter Ego Litigation was simply a smokescreen that, in reality, perpetuated Francis's unbridled control over and access to the Debtors' assets.  The installation of sham management should not be sufficient to prevent the appointment of a chapter 11 trustee in these Cases.  Rather, the fact that current management of these Debtors is merely a sham constitutes more than ample "cause" for appointment of the trustee under section 1104(a)(1).

3.    **Francis's Scheme to Transfer the Debtors' Rights to Other Entities Constitutes Cause to Mandate the Appointment of a Trustee**

Seven months before the commencement of the Debtors' bankruptcy cases, Francis, apparently fearful that Wynn Las Vegas would continue to exercise its remedies against the Debtors through the Alter Ego Litigation, sought to dispossess the Debtors of a revenue stream from a Pay-Per-View License Agreement for Live and Taped Events with DirecTV, LLC, and, presumably, the intellectual property rights to the content which normally would have been licensed from the Debtors to DirecTV, by attempting to transfer the agreement (and, presumably, the intellectual property content licensed) to another Francis-related entity, other than the Debtors.  Although the diversion of

---

[90] *V. Savino Oil*, 99 B.R. at 526.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the Debtors' assets was thwarted by DirecTV, Francis's efforts in this regard confirm his absolute

2    control over the Debtors and the Debtors' inability to act as a fiduciary for creditors.

3            4.    **Current Management of the Debtors Has Debilitating Conflicts of Interest That**

4              **Warrant the Appointment of a Trustee**

5        Section 1104(a)(1)'s list of wrongs in constituting "cause" for the appointment of a trustee is

6    illustrative only:  the "court need not find any of the enumerated wrongs in the statute to find cause

7    to appoint a trustee."[91]

8        "Cause" is often found based on a conflict of interest between a debtor's management and

9    the interests of the estate and its creditors.[92]  This conflict arises out of the debtor in possession's

10   duty to operate the estate as would a trustee.  "If a debtor remains in possession, the debtor's

11   directors have essentially the same fiduciary obligations to creditors and shareholders as would the

12   trustee for a debtor out of possession.  The willingness of courts to leave debtors in possession 'is

13   premised upon an assurance that the officers and managing employees can be depended upon to

14   carry out the fiduciary responsibility of a trustee.'"[93]  Thus:

15           The notion of fiduciary obligations proscribes self-dealing and
        negligent behavior.  These obligations are summarized by the duty of

16           loyalty and care.  The duty of loyalty and good faith forbids directors
        and other business operators from using their positions of trust and

17           control over the rights of other parties to further their own private
        interest, either by usurping opportunities, holding undisclosed

18           conflicts, or otherwise exploiting their position.[94]

19   A trustee may be appointed for misconduct or self-dealing, including questionable business dealings

20   between a debtor and related parties.[95]

21

22   [91] *In re Colorado-Ute Electric Ass'n*, 120 B.R. 164, 173-74 (Bankr. D. Colo. 1990).

23   [92] *Cajun Electric Power Coop. v. Central Louisiana Coop. (In re Cajun Electric Power Coop.)*, 74 F.3d 599, 600 (5th
Cir. 1996) (conflict of interest is sufficient reason for appointment of a chapter 11 trustee).  *Accord Fiesta Homes of*

24   *Georgia*, 125 B.R. 321, 325 (Bankr. S.D. Ga. 1990) ("presence of a conflict of interest constitutes cause for removal of
the Debtor in Possession from administration of [a] case"); *In re Bellevue Place Assocs*, 171 B.R. 615, 623 (Bankr. N.D.

25   .Ill. 1994) ("inability to fulfill fiduciary duties of a debtor-in-possession due to conflict of interest is itself cause to
appoint a trustee").  *See also In re SunCruz Casinos, LLC*, 298 B.R. 821, 832 (Bankr. S.D. Fla. 2003).

26   [93] *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 355, 105 (1985) (quoting *Wolf v. Weinstein*,
372 U.S. 633, 651(1963)); *see also In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3rd Cir. 1998).

27   [94] *Microwave Products* at 672.

28   [95] *See id.*

1    Here, even if postpetition current management somehow were able to stop allowing Francis

2    to "pull the strings," as in the instances discussed above, two courts already have ruled that Wynn

3    Las Vegas has a reasonable likelihood of prevailing on its claim that Francis's prepetition conduct,

4    including his control over the Debtors and his use of assets of the Debtors for his personal purposes,

5    require that the Debtors be treated as alter egos of Francis.  Due to the prepetition misconduct of

6    Francis and his cohorts, an issue in these Cases may be whether or not the Debtors' estates should

7    pursue claims for damages against current management for gross negligence and/or breach of

8    fiduciary duties due to management's participation in and/or enabling of Francis's prepetition pattern

9    of conduct resulting in alter ego determinations against the Debtors.  Current management of the

10    Debtors clearly is conflicted as regards to the potential pursuit of such claims against themselves.

11    Moreover, given that Francis's conduct took place on management's watch and with management's

12    apparent permission, any fulsome investigation of Francis's conduct to assess possible claims

13    against Francis and his cohorts in this regard has the potential to implicate management itself and

14    thus, cannot be entrusted to the same individuals.  Rather, cause exists to appoint a neutral third

15    party to ensure that all of these issues are fully and fairly addressed.

16    **B.**    **A Trustee Should Be Appointed in the Interests of Creditors Under Section 1104(a)(2).**

17    "Unlike § 1104(a)(1), which provides for mandatory appointment upon a specific finding of

18    cause, § 1104(a)(2) 'envisions a flexible standard.'  It give the district court discretion to appoint a

19    trustee 'when to do so would serve the parties' and estate's interests.'"[96]    Among the factors to be

20    considered are (i) the trustworthiness of the debtor, (ii) the prospects for the debtor's rehabilitation

21    guided by present management, (iii) the creditors' confidence, or lack thereof, in present

22    management, and (iv) the benefits derived from appointment of a trustee, balanced against the cost

23    of the appointment.[97]

24

25

26    [96] *Marvel Entertainment*, 140 F.3d at 474.

27    [97] *In re Ionosphere Clubs,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); *Microwave Products,* 102 B.R. at 675.  *See also In re Cardinal Industries, Inc*., 109 B.R. 755, 767 (Bankr. S.D. Ohio 1990); *In re Lowenschuss*, 171 F.3d at 685

28    (affirming finding that appointment of trustee was in best interest of creditors based in part on "Debtor's history of manipulating the Pension Plan and his control over the Pension Plan's nominal trustee").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The first three of these factors are often interrelated, and in the above-referenced cases, the

2    courts appointed a trustee based on acrimony between management and creditors (*Marvel*

3    *Entertainment*), self-dealing (*Microwave*), continued efforts at rehabilitation beyond reasonable

4    prospects (*Cardinal*); and an inability to formulate a long-term business plan (*Ionosphere*).  In each

5    case, a loss of confidence justified appointment of a trustee because the failure to appoint would

6    "jeopardize whatever chance exists to realize the potential value of these estates."[98]

7    In particular, the *Cardinal* court exercised its equitable powers to order the appointment of a

8    trustee because unsecured creditors were willing to risk the costs and uncertainties, if any,

9    occasioned by the appointment of a trustee.  As the creditors were the true stakeholders, the court

10   gave great weight to their risk analysis.[99]

11   A trustee is essential to remedy the vacuum created by the Debtors' abdication of control to

12   Francis, and the resulting self-dealing.  The Debtors do not exist independently from Francis, and

13   cannot be trusted to do anything other than what is in the best interests of Francis.  No rehabilitation

14   is in prospect for which any management expertise would be required and, in light of the "puppet"

15   managers installed by Francis, it appears that the Debtors' management would lack the knowledge

16   and expertise to lead any such rehabilitation.  Appointment of a trustee will ensure that expenditures

17   of the Debtors' assets will be controlled as appropriate in light of the extent of the estates' debts.

18   Therefore, even in the absence of "cause" mandating the appointment of a trustee, the appointment

19   of a trustee should be made in the best interests of creditors.

## V.

## **CONCLUSION**

22   For all of the reasons set forth herein, the Court should issue its Order:

23   (a)    Granting the Motion in its entirety;

24   (b)    Directing the appointment of a chapter 11 trustee in the Cases; and

---

[98] *Cardinal*, 109 B.R. at 767.

[99] *Cardinal, 109 B.R. at 767.  Accord, Colorado-Ute,* 120 B.R. at 177 (lengthy discussion of benefits and costs of trustee appointment, including conclusion that the cost of professionals for the trustee would not exceed, and would likely be less than the cost of professionals for the debtor, including the assumption that an independent trustee would expend less on professional fees because his relationships with creditors and other parties would be less confrontational and litigious).

(c)      Granting Wynn Las Vegas such other and further relief as the Court may deem just and proper under the circumstances.[100]

Dated: March 21, 2013                          PACHULSKI STANG ZIEHL & JONES LLP


By:    */s/ Malhar S. Pagay*
Malhar S. Pagay (CA Bar No. 189289)
Attorneys for Wynn Las Vegas, LLC, d/b/a
Wynn Las Vegas

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[100] The filing of this Motion is not intended to be nor shall it be construed as (a) consent by Wynn Las Vegas to the jurisdiction of this Court to adjudicate any dispute between Wynn Las Vegas and any of the Debtors, Wynn Las Vegas's claims against any of the Debtors or any counterclaims thereto, or any other proceeding commenced in the Cases or otherwise involving Wynn Las Vegas; (b) a waiver or release of Wynn Las Vegas's right to a trial by jury, or a consent to a trial by jury, in this or any other court; (c) a waiver of Wynn Las Vegas's right to have final orders on noncore matters entered only after de novo review by a United States District Court; (d) a waiver of the right (i) to withdraw the reference, seek abstention, or otherwise challenge the jurisdiction of this Court, with respect to any dispute between Wynn Las Vegas and any of the Debtors, Wynn Las Vegas's claims against any of the Debtors or any counterclaims thereto, or any other proceeding commenced in the Cases or otherwise involving Wynn Las Vegas; or (ii) to assert that the reference already has been withdrawn with respect to any subject matter of the Motion, Wynn Las Vegas's claims against any of the Debtors, or other proceeding commenced in this case or otherwise involving Wynn Las Vegas; or (e) an informal proof of claim.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:   10100 Santa Monica Blvd., Ste. 1300, Los Angeles, CA  90067

A true and correct copy of the foregoing documents entitled (*specify*):
**NOTICE OF MOTION AND MOTION FOR ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On (*date*) **March 21, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 21, 2013**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery**
The Honorable Sandra R. Klein
United States Bankruptcy Court
255 E. Temple St., Ste. 1582 / Courtroom 1575
Los Angeles, CA  90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 21, 2013 | Sophia L. Lee | /s/Sophia L. Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:265682.1 93837/001

**1.** **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Dare Law dare.law@usdoj.gov
- Ronald N Richards ron@ronaldrichards.com
- Ronald D Tym RTym@Tymfirm.com
- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov
- Andy C Warshaw awarshaw@lawcenter.com,
  mstevens@lawcenter.com
- Robert M Yaspan court@yaspanlaw.com,
  tmenachian@yaspanlaw.com

**2.** **SERVED BY OVERNIGHT MAIL**

| *Debtor* | **Robert M Yaspan** | *U.S. Trustee* |
|---|---|---|
| **GGW Brands, LLC** | Law Offices of Robert M Yaspan | **United States Trustee (LA)** |
| 1601 Cloverfield Blvd. | 21700 Oxnard St Ste 1750 | 725 S Figueroa St., 26th Floor |
| Santa Monica, CA 90404 | Woodland Hills, CA 91367 | Los Angeles, CA 90017 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:265682.1 93837/001