

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re:<br><br>GGW Brands, LLC<br>GGW Marketing, LLC<br><br><br><br>Debtor(s). | Case No.: 2:13-bk-15130-SK<br><br>CHAPTER 11<br><br>**COURT'S TENTATIVE RULINGS ON MOTIONS REGARDING THE EMPLOYMENT AND FEES OF THE LAW OFFICES OF ROBERT M. YASPAN WHICH WERE ADOPTED AS THE COURT'S FINAL RULINGS AT THE HEARING**<br><br>Date:    11/14/13<br>Time:    9:30 a.m.<br>Courtroom: 1575 |

    On 3/8/13, the Law Offices of Robert M. Yaspan (Yaspan) filed an "Application of Debtor for Authority to Retain the Law Offices of Robert M. Yaspan as General Counsel for the Estate" (Employment Application). Docket #14. On 8/27/13, the United States Trustee filed a "Motion for Disgorgement of Fees Against Robert M. Yaspan and the Law Offices of Robert M. Yaspan . . ." (Disgorgement Motion). Docket #325. On 9/11/13, Yaspan filed a "Motion to Re-Set Application of Debtor for Authority to Retain the Law Offices of Robert M. Yaspan as General Counsel for the Estate" (Re-Set

**ORIGINAL**

1   Motion).  Docket #337.  Also on 9/11/13, Yaspan filed a "First and Final Application of

2   the Law Offices of Robert M. Yaspan, General Counsel of the Debtor-in-Possession, for

3   Compensation" (Fee Application).  Docket #339.   The Employment Application,

4   Disgorgement Motion, Re-Set Motion, and Fee Application were set for hearing on

5   11/14/13 (11/14/13 Hearing).

6       The day before the 11/14/13 Hearing, the Court issued tentative rulings on the

7   Employment Application, Disgorgement Motion, Re-Set Motion, and Fee Application,

8   which were emailed to Yaspan, the Chapter 11 Trustee, and the United States Trustee

9   (11/14/13 Tentative).  During the 11/14/13 Hearing, Yaspan, the Chapter 11 Trustee,

10  and the United States Trustee appeared and were given an opportunity to be heard.

11  The Court then adopted the 11/14/13 Tentative as its final rulings on the Employment

12  Application, Disgorgement Motion, Re-Set Motion, and Fee Application.  A copy of the

13  11/14/13 Tentative is attached hereto.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**11/14/13**

Before the Court are the following motions:

> 1) "Application of Debtor for Authority to Retain the Law Offices of Robert M. Yaspan as General Counsel for the Estate" (Employment Application), filed 3/8/13, Docket #14;
> 2) "Motion for Disgorgement of Fees Against Robert M. Yaspan and the Law Offices of Robert M. Yaspan Pursuant to 11 U.S.C. § 329 of the Bankruptcy Code" (Disgorgement Motion), filed 8/27/13, Docket #325;
> 3) "Motion to Re-Set Application of Debtor for Authority to Retain the Law Offices of Robert M. Yaspan as General Counsel for the Estate" (Re-Set Motion), filed 9/11/13, Docket #337; and
> 4) "First and Final Application of the Law Offices of Robert M. Yaspan, General Counsel of the Debtor-in-Possession, for Compensation" (Fee Application), filed 9/11/13, Docket #339.

I.      Background

On 2/27/13, GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC (collectively Original GGW Debtors or GGW Entities) filed bankruptcy petitions.  Docket #1.[1]  Robert M. Yaspan of the Law Offices of Robert M. Yaspan (Yaspan) filed the petitions on behalf of each of the Original GGW Debtors.  Id.  The GGW Entities paid Yaspan the following amounts on the following dates:

| Entity | Case No. | Retainer/Date | Docket Number and Date |
|---|---|---|---|
| GGW Brands, LLC | 13-15130 | $20,000, 2/27/13 | Docket #s 18 and 24, filed 3/13/13 |
| GGW Direct, LLC | 13-15132 | $20,000, 2/27/13 | Docket #s 15 and 22, filed 3/13/13 |
| GGW Events, LLC | 13-15134 | $5,000, 2/27/13 | Docket #s 17 and 23, filed 3/13/13 |
| GGW Magazine, LLC | 13-15137 | $5,000, 2/26/13 | Docket #s 17 and 23, filed 3/13/13 |

On 3/8/13, Yaspan filed the Employment Application.  Docket #14.

---

[1]  Virtually identical Employment Applications, Disgorgement Motions, and Re-Set Motions were filed in each of the Original GGW Debtors' cases.  Therefore, all references to "Docket" are to the docket in GGW Brands, LLC, case no. 2:13-bk-15130-SK unless otherwise indicated.  On 4/24/13, the Court entered an order for joint administration of the Original GGW Debtors' cases. Docket #98.

1

On 3/13/13, Yaspan filed a "Disclosure of Compensation of Attorney for Debtor" (Disclosure or Disclosures) in each of the Original GGW Debtors' cases, indicating that he had agreed to accept a combined $50,000 from the Original GGW Debtors in exchange for legal services (Retainer). Docket #18. On 3/21/13, the United States Trustee (UST) filed an "Objection to the Employment Application of Law Offices of Robert M. Yaspan as General Bankruptcy Counsel" (Employment Objection). Docket #27. On 3/26/13, Yaspan filed a "Notice of Hearing Regarding Objection to Debtor's Application for Authority to Employ the Law Offices of Robert M. Yaspan as General Bankruptcy Counsel" (4/17/13 Notice), setting the Employment Application for hearing on 4/17/13. Docket #42. On 4/10/13, Yaspan filed a "Memorandum of Points and Authorities of the Chapter 11 Debtor in Reply to Objection to the Employment Application of Law Offices of Robert M. Yaspan as General Chapter 11 Counsel" (Employment Reply). Docket #73.

On 4/11/13, the Court entered an order approving the appointment of a chapter 11 trustee, and on 4/12/13, the Court appointed R. Todd Neilson as the chapter 11 trustee (Trustee) in each of the Original GGW Debtors' cases. Docket #s 78, 82.

The Employment Application came on for hearing on 4/17/13 (First Employment Application Hearing). On 4/16/13, the day before the First Employment Application Hearing, the Court issued a tentative ruling (4/17/13 Tentative) stating that:

> On 4/11/13, the Court entered an 'Order Granting Motion for Order Directing the Appointment of a Chapter 11 Trustee.' Docket #78. And, on 4/12/13, the Court entered an 'Order Approving Appointment of a Chapter 11 Trustee.' Docket #82. Therefore, this matter is moot. _Appearances waived_.

The UST appeared at the First Employment Application Hearing. Yaspan did not. The UST requested that the matter be continued to allow Yaspan to seek employment and to apply for any fees incurred between the filing of the Original GGW Debtors' petitions and the appointment of the Trustee. The Court agreed and the matter was continued to 6/13/13 (Second Employment Application Hearing).

On 4/18/13, a notice of the Second Employment Application Hearing was entered on the Docket. The text of the entry states: "Hearing (Bk Motion) Continued (RE: related document(s) [14] APPLICATION TO EMPLOY filed by GGW Brands, LLC) Hearing to be held on 06/13/2013 at 08:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for [14]."[2] The notice was emailed to Yaspan via Notice of Electronic Filing (NEF) at the following address: "Robert M

---

[2] Docket #14 is the Employment Application.

Yaspan on behalf of Debtor GGW Brands, LLC; court@yaspanlaw.com, tmenachian@yaspanlaw.com."

On 6/12/13, the day before the Second Employment Application Hearing, the Court issued a tentative ruling (6/13/13 Tentative), stating:

> If any party wishes to be heard on this matter they must appear at the hearing. If no party appears the Court will consider this matter to be moot.

During the 6/13/13 Second Employment Application Hearing, the UST appeared but no other parties made an appearance. The Court noted on the record that that the UST had requested the continuance of the First Employment Application Hearing to ensure that Yaspan could seek employment and apply for fees. The Court stated that because no one appeared at the Second Employment Application Hearing, other than the UST, the Court would consider the matter moot. The UST submitted and the matter was deemed moot.

On 8/27/13, the UST filed the Disgorgement Motion, in which the UST seeks disgorgement of the $50,000 Retainer the Original GGW Debtors paid Yaspan. Docket # 325. On 9/11/13, Yaspan filed the Re-Set Motion and the Fee Application. Docket #s 337, 339. Yaspan noticed both the Re-Set Motion and Fee Application for hearing on 10/3/13. Docket #s 338, 340. Also on 9/11/13, the Trustee filed the "Joinder to the U.S. Trustee's Motion for Disgorgement . . ." (Disgorgement Joinder). Docket #341. On 9/12/13, Yaspan was instructed to file "an amended notice of motion/hearing with correct hearing information" regarding the Fee Application. Docket #343.

On 9/13/13, the Court approved a stipulation continuing the hearings on the Re-Set Motion and Disgorgement Motion to 11/14/13. Docket #350. Also on 9/13/13, Yaspan filed a "Notice of Continuance [of Fee Application]," continuing the hearing on the Fee Application to 12/18/13. Docket #s 354, 357.

On 9/19/13, the Trustee filed the "Chapter 11 Trustee's Opposition to Motion to Re-Set Application of Debtor for Authority to Retain the Law Offices of Robert M. Yaspan as General Counsel for the Estate" (Re-Set Opposition). Docket #358. On 9/27/13, Yaspan filed the "Opposition to Motion for Disgorgement . . ." (Disgorgement Opposition). Docket #365.

On 10/4/13, the Court issued a "Notice Advancing Hearing Re First and Final Application of the Law Offices of Robert M. Yaspan, General Counsel for the DIP, for Compensation" (Notice), advancing the hearing date on the Fee Application from 12/18/13 to 11/14/13. Docket #367. On 10/31/13, the Trustee filed the "Chapter 11 Trustee's Opposition to First and Final Application of the Law Offices of Robert M. Yaspan for Compensation" (Fee Opposition). Docket #383. And, on 11/7/13, Yaspan filed the "Reply to Chapter 11 Trustee's Opposition to First and Final Application of the Law Offices of Robert M. Yaspan,

General Counsel for the Debtor-in-Possession, for Compensation" (Fee Reply). Docket #387.

II.    Pleadings

1.    Re-Set Motion

On 9/11/13, Yaspan filed the Re-Set Motion and a declaration (Yaspan 9/11/13 Decl.), requesting that the Court hear and approve the Employment Application. Docket #337. In the Re-Set Motion, Yaspan argues that he understood the Court's 4/17/13 Tentative to mean that the Employment Application had been taken off calendar and he did not attend the 4/17/13 Hearing because appearances were waived. Id. at 3. He contends that he understood "moot" to mean the Court would not hear the Employment Application at that time and expected that "any employment issues could be addressed later including, possibly, with the fee applications." Id. According to Yaspan, he did not know the 4/17/13 Hearing was continued to 6/13/13 and therefore, did not see the 6/13/13 Tentative. Id. Yaspan claims that he was unaware of the continued hearing and the 6/13/13 Tentative "until the filing of the motion to disgorge fees." Id. at 4. Yaspan goes on to argue that he provided "valuable and necessary legal services to the debtors-in-possession that were necessary for the administration of the estates" and that because the Court did not issue an order on the fully briefed Employment Application, it should now be heard on its merits. Id.

On 9/19/13, the Trustee filed the Re-Set Opposition. Docket #358. In the Re-Set Opposition, the Trustee argues that the Re-Set Motion should be denied because the Original GGW Debtors are no longer in possession of their estates, and therefore, the estates "have no need for [Yaspan's] services." Id. at 2.

2.    Employment Application

On 3/8/13, Yaspan filed the Employment Application and a declaration (Yaspan 3/4/13 Decl.), Docket #14, in which Yaspan sought approval of his employment as counsel for the Original GGW Debtors. The Employment Application listed the types of services Yaspan would provide to the Original GGW Debtors, including: 1) negotiating with creditors; 2) assisting the Original GGW Debtors with their chapter 11 plan; 3) preparing and filing required schedules and other documents; 4) preparing pleading and attending Court hearings; 5) giving the Original GGW Debtors "legal advice with respect to their powers and duties as Debtor-in-Possession in the continued operation of the management of his [sic] property"; and 6) performing all other "necessary" legal services which did not require the attention of "Special Counsel." Id. at 2. In the Employment Application, Yaspan stated that: 1) he was a disinterested person; 2) he was not aware of any claim he had against the Original GGW Debtors; 3) the Original GGW Debtors had provided him a combined $50,000 Retainer, and as of the

4

date the bankruptcy petitions were filed, approximately $38,000 of the Retainer remained in his client trust account (Trust Account).  Yaspan 3/4/13 Decl. ¶¶ 5, 6, 8.

On 3/21/13, the UST filed the Employment Objection, in which the UST objected to the Employment Application on the following grounds: 1) Yaspan needed to provide more information regarding the source of the Retainer so as to determine whether Yaspan was disinterested—the UST "believ[ed] that GGW Brands, LLC is a holding company and GGW Magazine[,] LLC may not be operating;" 2) the Original GGW Debtors' petitions listed duplicative claims without explaining whether each of the GGW Entities was responsible for the entire debt or only a portion of the debt; and 3) Yaspan's representation of all the Original GGW Debtors may have created a conflict of interest because Yaspan could not act as fiduciary to all of the Original GGW Debtors—the UST believed there may have been expense sharing between the GGW Entities and the Employment Application did not discuss any such issues.  Docket #27 at 2-5.

On 4/10/13, Yaspan filed the Employment Reply and a 4/10/13 Declaration of Robert M. Yaspan (Yaspan 4/10/13 Decl.).  Docket #73.  In the Employment Reply, Yaspan stated that he concluded GGW Direct, LLC was "the main operating company" and GGW Magazine, LLC and GGW Events, LLC were "discontinued."  Id. at 3.  He contended that representation of all the Original GGW Debtors was in the best interests of creditors—it would reduce the administrative costs and eliminate a "learning curve by four different counsel."  Id. at 4.  According to Yaspan, the presence of a parent-subsidiary relationship (between GGW Brands, LLC and the other GGW Entities) only created a potential conflict of interest, which would not constitute grounds to deny employment unless an actual conflict of interest arose—in which case, the Court could disgorge any fees.  Id. at 5-7.

### 3.    Disgorgement Motion, Disgorgement Joinder

On 8/27/13, the UST filed the Disgorgement Motion seeking disgorgement of the $50,000 Retainer as well as any fees drawn down from the Retainer.  Docket #325 at 7.  In support of the Disgorgement Motion, the UST filed a 8/23/13 Declaration of Jack Arutyunyan (Arutyunyan 8/23/13 Decl.).  Id.  The UST first argues that Yaspan is precluded from receiving "compensation" because he received payment without first securing a Court order approving his employment.  Id. at 5.  Next, the UST contends that the Retainer and any fees drawn down from the Retainer should be disgorged because Yaspan failed to provide competent legal services—he listed an address for the Original GGW Debtors even though they had not been located at that address for two years before filing bankruptcy.  Id. at 6.  According to the UST, this "caused confusion and misled" the Court, creditors, and the UST, causing mail sent to the Original GGW Debtors to be returned to the sender.  Id. at 6-7.  The UST asked Yaspan to

correct the address with the Court, and according to the UST, he "refused to do so." Id. at 7. The address was not corrected until the Trustee was appointed. Id.

On 9/11/13, the Trustee filed the Disgorgement Joinder and a declaration of Jonathan M. Weiss (Weiss 9/11/13 Decl.). Docket #341. The Trustee joined the UST's argument that Yaspan should not receive any compensation because he failed to secure an order authorizing his employment. Id. at 2-3. The Trustee notes that Yaspan received NEF notice of the continued hearing. Id. at 2 n.1. Further, Yaspan indicated to the Trustee that he no longer has any of the Retainer in his Trust Account. Id. at 3; Weiss 9/11/13 Decl. ¶ 5, Ex. C. The Trustee requests that any order requiring disgorgement be without prejudice as to any future claims the Trustee may have against Yaspan. Disgorgement Joinder at 3.

On 9/27/13, Yaspan filed the Disgorgement Opposition. Docket #365. In support of the Disgorgement Opposition, Yaspan filed the 9/27/13 Declaration of Robert M. Yaspan (Yaspan 9/27/13 Decl.). Id. Yaspan argues that the Court should deny the Disgorgement Motion, and makes five key arguments in support of his position:

> 1) Yaspan did not abandon the Employment Application because he did not know the 4/17/13 Hearing was continued and was not aware of the 6/13/13 Tentative;
> 2) Yaspan provided valuable and necessary services that provided a benefit to the estates—he did not have time to file a correction to the incorrect address because Chris Dale had resigned and no one was available to sign the prepared amendment, and in any event, the address was "quickly corrected by the Chapter 11 Trustee;"
> 3) Yaspan has a security interest in the "deposit" and therefore it is not subject to disgorgement;
> 4) The Trustee represents all of the Original GGW Debtors, proving that the UST's Employment Objection regarding a potential conflict of interest should not be sustained and the Employment Application should be approved; and
> 5) Yaspan's fees should be allowed as administrative expenses under 11 U.S.C. § 503(b)(1)(A).

Id. at 6-8.

Yaspan admits that he deducted $16,086.13 in prefiling services from the Retainer. Id. at 4-5.

4.    Fee Application

On 9/11/13, Yaspan filed the Fee Application in which he seeks $59,367.66 in fees and $3,700.45 in expenses for a total of $63,068.11. Fee Application at 2.

According to Yaspan, he incurred those fees and costs for the period between 2/27/13 and 4/12/13, as well as for work performed after 4/12/13 related to turning the case over to the Trustee. Id. Although the Fee Application does not mention any prepetition services performed by Yaspan, it states that as of 2/27/13—the date that the Original GGW Debtors filed bankruptcy—$33,913.87 of the $50,000 Retainer remained in the Trust Account. Id. Yaspan seeks to draw $33,913.87 of his requested total from the amount that purportedly remains in the Trust Account and requests payment of the $29,154.24 balance from the Original GGW Debtors. Id.

On 10/31/13, the Trustee filed the Fee Opposition. Docket #383. The Trustee argues that "because [Yaspan] has not obtained court approval of [his] employment as an estate professional in these cases prior to allegedly providing services to the Debtors, [he] is not entitled to any fees from the Debtor's estates. Fee Opposition at 2. The Trustee also argues that the Employment Application should be denied for the reasons stated in the Re-Set Opposition and Disgorgement Motion. Id.

On 11/7/13, Yaspan filed the Fee Reply, arguing that the Trustee did not oppose "the quality of the work performed by [Yaspan]" and asserting that if Yaspan "ends up being employed, then the entire requested sum of fees should be awarded." Fee Reply at 2. According to Yaspan, the "seemingly minor issue" of listing an incorrect address for the Original GGW Debtors does not undermine the "valuable and necessary legal services" provided, "especially in light of the fact that it is no longer an issue." Id.

III.    Analysis

1.    Re-Set Motion

Yaspan argues his Employment Application should be re-set for two reasons. Re-Set Motion at 2-3. First, he argues he did not have to appear at the 4/17/13 First Employment Application Hearing and he did not appear at the 6/13/13 Second Employment Application Hearing because he did not receive notice that the 4/17/13 hearing was continued to 6/13/13. Id. at 3-4. Second, he argues that the Employment Application should be re-set because the Court did not actually approve or deny the Employment Application, but rather, deemed it moot. Id.[3]

Yaspan's first argument lacks merit. Counsel has a "responsibility to monitor the court's docket." Fox v. Am. Airlines, Inc., 295 F. Supp. 2d 56, 59 (D. D.C. 2003) (denying motion to reconsider judgment despite argument that plaintiffs' counsel

---

[3]    The Trustee argues that the Re-Set Motion should be denied because the Original GGW Debtors are no longer in possession of the estates and therefore have no need for Yaspan's services. Re-Set Opposition at 2. This argument misses the point. Yaspan seeks employment for the period before the Trustee's appointment.

did not receive a copy of a motion to dismiss).  After the 4/17/13 First
Employment Application Hearing, during which Yaspan did not appear, a 4/18/13
docket entry stated that the 4/17/13 Hearing was continued to 6/13/13.  Yaspan
is on the NEF notice list and the Docket confirms that he received notice that the
4/17/13 First Employment Application Hearing was continued to 6/13/13.

The 6/13/13 Tentative—which was issued the day before the 6/13/13 Second
Employment Application Hearing—provided that "If any party wishes to be heard
on this matter they must appear at the hearing.  If no party appears, the Court will
consider this matter moot."  Yaspan did not appear at the 6/13/13 Hearing.  He
did so at his own peril.  See LBR 9013-1(j)(1) ("The failure of counsel . . . to
appear, unless excused by the court in advance, may be deemed consent to a
ruling upon the motion adverse to that counsel's . . . position); see also Matter of
Gober, 100 F.3d 1195, 1202 (5th Cir. 1996) (where a party receives "notice of all
hearings" and "[chooses] not to appear," they do "so at [their] peril").

Yaspan next argues that the Employment Application should be re-set because
the Court neither approved nor denied it but instead indicated that it was "moot."
Re-Set Motion at 3-4.  Federal Rule of Bankruptcy Procedure (FRBP) 9024 and
Federal Rule of Civil Procedure (FRCP) 60(a)[4] allow this Court to clarify any
ambiguity in a prior ruling "to correct 'failure to memorialize part of its decision,' or
to reflect the 'necessary implications' of the original order,' [or] 'to ensure that the
court's purpose is fully implemented.'"  Garamendi v. Henin, 683 F.3d 1069,
1079-80 (9th Cir. 2012).  The Court cannot "make corrections that, under the
guise of a mere clarification, reflect a new and subsequent intent because it
perceives its original judgment to be incorrect.  Rather, the interpretation must
reflect the contemporaneous intent of the [Court] as evidenced by the record."
Id. at 1080 (internal quotation marks omitted).  "Rule 60(a)'s touchstone is fidelity
to the intent behind the original judgment."  Id. at 1077-78.

Here, the 4/17/13 Tentative indicated that the Employment Application would be
deemed moot and that appearances were waived because of the Trustee's
appointment.  Despite the waiver of appearances in the 4/17/13 Tentative,
Yaspan could have and should have appeared at that hearing and sought
clarification regarding what "moot" meant and/or voiced his objection to the Court
considering his Employment Application moot.  Instead, the UST appeared at the
4/17/13 First Employment Application Hearing, and specifically asked for a
continuance to allow Yaspan to seek fees for the period he represented the
Original GGW Debtors, up through the appointment of the Trustee.  The Court

---

[4]  FRCP 60(a), which is titled "Corrections Based on Clerical Mistakes; Oversights and
Omissions," provides, in pertinent part, that:

> The court may correct a clerical mistake or a mistake arising from oversight or omission
> whenever one is found in a judgment, order, or other part of the record. The court may do
> so on motion or on its own, with or without notice.

agreed and the 4/17/13 First Employment Application Hearing was continued to 6/13/13.

Despite receiving notice of the continuance of the First Employment Application Hearing to 6/13/13, Yaspan failed to appear at the 6/13/13 Second Employment Application Hearing. If Yaspan was unclear about why the Employment Application was continued from 4/17/13, he could have ordered a transcript of the hearing, or he could have filed a brief and sought clarification from the Court. Yaspan also should have checked the Court's 6/13/13 Tentative Ruling, issued the day before the 6/13/13 Second Employment Application Hearing,[5] which directed any party wishing to be heard to appear during the Second Employment Application Hearing. Instead, Yaspan did nothing and continued to do nothing for more than three months.

Given the comments by the UST during the First Employment Application Hearing and Yaspan's failure to file a fee application or actively seek approval of his employment before the Second Employment Application Hearing, it follows that the ruling at the conclusion of the 6/13/13 Hearing was intended to deny the Employment Application. See In re Shirley, 134 B.R. 940, 944 (B.A.P. 9th Cir. 1992) ("When there is no compliance with the Code or rules, a professional may forfeit his right to compensation."); Agro Dutch Indus. Ltd. V. United States, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (amending effective date of order for preliminary injunction because, although original date was chosen deliberately, corrected date better served the intent of the injunction). Further, the Court's Tentative Ruling procedures state explicitly that "[a] moving party's failure to attend a hearing on its motion will result in denial of the motion for failure to prosecute." TR Procedures. Therefore, the Court clarifies its 6/13/13 Tentative as denying as moot Yaspan's Fee Application and finds it inappropriate for the Court to grant Yaspan's Re-Set Motion.

    2.      Employment Application

Yaspan seeks a Court order authorizing his employment as counsel for the Original GGW Debtors through the appointment of the Trustee. Re-Set Motion at 3; see Employment Application at 2. Even if the Court were to grant Yaspan's

---

[5] "Judge Sandra R. Klein's Tentative Ruling Procedures" (TR Procedures) which are posted on the Bankruptcy Court's website, state that:

    Judge Klein issues tentative rulings by 2:00 p.m. the day before the hearing date. These rulings are generally available via the Court's webPACER service and will appear on the calendars posted outside the courtroom and placed on counsel tables inside the courtroom on the date scheduled for the hearing. . . . A moving party's failure to attend a hearing on its motion will result in denial of the motion for failure to prosecute . . . .

http://www.cacb.uscourts.gov/sites/cacb/files/documents/judges/instructions/SK_tentative%20ruling%20procedures.pdf.

Re-Set Motion—which as analyzed above, would not be appropriate—Yaspan's Employment Application must be denied because it seeks *nunc pro tunc*[6] employment without offering a satisfactory explanation for the delay.

Here, although Yaspan initially filed the Employment Application shortly after the Original GGW Debtors filed bankruptcy, he failed to prosecute the matter or take any action regarding the Employment Application for approximately six months. Yaspan did not seek to re-set the Employment Application until 9/11/13, nearly three months after the 6/13/13 Second Employment Application Hearing, and only after the United States Trustee filed the Disgorgement Motion in which it argued that Yaspan should be required to disgorge the Retainer in its entirety.

Yaspan not only received a $50,000 Retainer from the Original GGW Debtors on or immediately before the date the Original GGW Debtors filed bankruptcy, but he also drew down on the Retainer without a Court order authorizing his employment. Although Yaspan argues that he understood the 4/17/13 Tentative to mean that the Employment Application was taken off calendar and would be heard with a fee application, such an argument does not ring true. It was in his exclusive control to file a fee application and he chose not to do so until approximately six months later, and only after the Disgorgement Motion was filed. Further, and more importantly, Yaspan does not explain why he drew down on the Retainer without a Court order authorizing his employment. Therefore, this Court now considers Yaspan's Employment Application as seeking employment *nunc pro tunc*.

Courts have authority to *nunc pro tunc* or retroactively approve the employment of professionals. In re Crest Mirror & Door Co., 57 B.R. 830, 832 (B.A.P. 9th Cir. 1986). Retroactive employment is warranted only in "extraordinary circumstances." Id. "Such awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankrupt estate in some significant manner." In re Atkins, 69 F.3d 970, 975 (9th Cir. 1995).

When determining whether to approve an employment application *nunc pro tunc,* the Court must "balance[e] the equities and exercise[e] its discretion. It must weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been entered. It must further determine . . . whether or not the debtors could have functioned without such services." In re Crest Mirror & Door Co., 57 B.R. at 832 (internal citations omitted). Other factors that courts consider include "whose

---

[6]  "Nunc pro tunc is latin for 'now and then' and generally operates to give retroactive effect to an order or other act." In re Bill & Paul's Sporthaus, Inc., 31 B.R. 345, 348 (Bankr. W.D. Mich. 1983); accord Black's Law Dictionary 1174 (9th ed. 2009) ("*Nunc pro tunc*" means "[n]ow for then . . . [h]aving retroactive legal effect through a court's inherent power . . . .").

responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field." Id. at 832-833.

When determining if an employment application should be approved *nunc pro tunc*, Courts can consider several other factors, including whether:

> 1) The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;
> 2) The party for whom the work was performed approves the entry of the *nunc pro tunc* order;
> 3) The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;
> 4) No creditor or party in interest offers reasonable objections to the entry of the *nunc pro tunc* order;
> 5) The professional satisfied all the criteria for employment pursuant to [11 U.S.C. § 327 and FRBP 2014] at or before the time services were actually commenced and remained qualified during the period for which services were provided;
> 6) The work was performed properly, efficiently, and to a high standard of quality;
> 7) No actual or potential prejudice will inure to the estate or other parties in interest;
> 8) The applicant's failure to seek preemployment approval is satisfactorily explained; and
> 9) The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

Id. (emphasis omitted).

Some of the factors listed above weigh in favor of approving the Employment Application *nunc pro tunc*. This Court found that the Original GGW Debtors and GGW Marketing, LLC acted as a single business entity, and therefore the UST's argument that Yaspan's representation of the all the Original GGW Debtors constituted a conflict of interest is not well taken. Employment Objection at 4-5; Argyle Online, LLC v. Neilson, case no. 2:13-ap-1552-SK, Docket #137 at 43-46. The application was fully briefed before the 4/17/13 First Employment Application Hearing and it appears that the Original GGW Debtors authorized Yaspan's employment.

Despite the factors weighing in favor of Yaspan's employment *nunc pro tunc*, the following factors are fatal to the Court approving his employment *nunc pro tunc*: 1) Yaspan's delay in procuring an order authorizing his employment; 2) Yaspan drew down fees from the Retainer without having received Court approval of his employment; and 3) Yaspan did not disclose any prepetition work he purportedly performed for the Original GGW Debtors, although the Yaspan 3/4/13 Decl.,

Disgorgement Opposition, and Fee Application, indicate that he had drawn down on the Retainer for prefiling services, which violates FRBP 2014(a). In re A.W. Logging, Inc., 356 B.R. 506, 512-13 (Bankr. D. Idaho 2006) (denying employment application for failure to comply with FRBP 2014(a) and 2016(a), where counsel did not disclose "prepetition services and receipt of payments"); see In re Am. Int'l Refinery, Inc., 436 B.R. 364, 379-80 (Bankr. W.D. La. 2010) (holding that attorney's failure to disclose source of retainer and details of prepetition work for debtors in a related transaction violated the disclosure requirements of FRBP 2014(a)).

The Court recognizes that the 4/17/13 Tentative and the 6/13/13 Tentative might have caused some confusion regarding whether the Employment Application was denied or granted.  The Court also recognizes that Yaspan promptly filed the Employment Application after the Original GGW Debtors filed the petitions. However, this cannot excuse the fact that Yaspan: 1) drew down on the $50,000 Retainer without having had his Employment Application approved; 2) did not raise any issue regarding the Court's 4/17/13 Tentative or its 6/13/13 Tentative until after the UST filed the Disgorgement Motion; and 3) did not file a fee application until after the Disgorgement Motion was filed.  See In re Downtown Inv. Club III, 89 B.R. 59, 63-64 (B.A.P. 9th Cir. 1988) ("A retroactive authorization order should not be issued where the lateness in seeking court approval of employment is accompanied by inexcusable or unexplained negligence. . . . There is no unjust hardship in requiring attorneys to observe the strict requirements of § 327 because professionals are charged with knowledge of the law."); see also In re Princeton Med. Mgmt. Inc., 249 B.R. 813, 816 (Bankr. M.D. Fla. 2000) (holding that employment application nunc pro tunc could not be approved where applicant filed a corrected application five months after "the court identified the problems with the original application").

Yaspan, an attorney practicing bankruptcy law since 1972, Yaspan 3/8/13 Decl. ¶ 10, could have appeared at either the 4/17/13 First Employment Application Hearing or the 6/13/13 Second Employment Application Hearing if he found the Court's 4/17/13 Tentative or 6/13/13 Tentative to be ambiguous. Moreover, it was Yaspan's responsibility to ensure an order authorizing his employment was issued before he drew down on the Retainer. "When there is no compliance with the Code or rules, a professional may forfeit his right to compensation.  The services for which compensation is requested should have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court. . . . Thus an attorney who acts . . . without approval by the court may be denied any compensation even though valuable services were rendered in good faith."  In re Shirley, 134 B.R. 940, 944 (B.A.P. 9th Cir. 1992) (internal quotation marks and citations omitted).  Simply put, Yaspan's conduct is not excused by any alleged confusion caused by the Court's 4/17/13 Tentative or 6/13/13 Tentative.

Yaspan next argues that he provided "valuable and necessary legal services . . . that were necessary for the administration of the estates." Re-Set Motion at 4; see Disgorgement Opposition at 6-8. The dockets reflect that Yaspan worked on the following matters: 1) the petitions; 2) the Employment Application; 3) an "Opposition of Debtor-in-Possession to Motion to Direct the Appointment of a Chapter 11 Trustee" (Trustee Opposition), Docket #43; and 4) untimely monthly operating reports (MORs), which were filed in each of the Original GGW Debtors' cases. As an initial matter, the petitions were deficient. The Court notes that these deficiencies are common in bankruptcy filings and Yaspan filed the required documents per the dates indicated in the notices.

There were other deficiencies and inaccuracies related to the Original GGW Debtors' cases. In the Master Mailing List, which was filed on 2/28/13, Yaspan listed the Original GGW Debtors' address as "1601 Cloverfield Blvd. Santa Monica, CA 90404," (SM Address), Docket #4, even though he later filed a venue disclosure form with the Original GGW Debtors' correct address on 3/15/13. Docket #26. The Original GGW Debtors had not used the SM Address for two years before they filed bankruptcy. See Arutyunyan 8/23/13 Decl. ¶ 3. Providing the incorrect address caused mail addressed to the Original GGW Debtors to be returned to sender. Id. ¶ 4. Yaspan was informed of the incorrect address on 4/8/13 during the 341(a) meeting of the creditors but did not correct it. Rather, Yaspan concedes that the Trustee, and not he, corrected the address. Disgorgement Opposition at 4, 7.

Moreover, Yaspan failed to file timely the February 2013 MORs. These MORs for the month ending 2/28/13, were due on 3/15/13, but were not filed until 4/9/13. Docket #64. And, the MORs were mostly blank—the Court does not question the accuracy of the MORs but seriously doubts that much time was expended in preparing them. These deficiencies and inaccuracies undercut any benefit or value that Yaspan purportedly conferred upon the estates.

Yaspan contends that the authority cited in the Disgorgement Motion, In re Atkins, 69 F.3d 970, 973 (9th Cir. 1995), In re Monument Auto Detail, Inc., 226 B.R. 219, 224 (9th Cir. BAP 1998), In re Weibel, Inc., 176 B.R. 209, 211-12 (B.A.P. 9th Cir. 1994), In re Shirley, 134 B.R. at 943, and In re Downtown Inv. Club III, 89 B.R. 59, 63-64 (B.A.P. 9th Cir. 1988), is inapposite because in those cases, "the employment applications had been denied, the attorneys had failed to seek employment, or the attorneys had abandoned seeking employment." Disgorgement Opposition at 6. In contrast, Yaspan argues that he did not abandon the Employment Application because he understood that it was taken off calendar so that it could be heard with a fee application. Id. at 6. Yaspan's position lacks merit. Filing a fee application was in Yaspan's exclusive control. He has not presented any evidence or argument demonstrating why he waited more than six months to do so.

13

Further, although Yaspan contends that he was not aware of the 6/13/13 Second Employment Application Hearing, Yaspan received notice of the continuance through NEF. The Court finds that Yaspan's failure to properly prosecute his Employment Application is deemed as his abandoning seeking employment in the Original GGW Debtors' cases.

3.    Disgorgement Motion

"[A] bankruptcy court has broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of [§§ 327, 329, 330, 331]." In re Lewis, 113 F.3d 1040, 1045 (9th Cir. 1997) (denying compensation because of attorney's failure to comply with FRBP 2016 and §§ 329). It follows that an attorney's failure to timely seek approval of his employment is grounds for disgorgement. In re Escojido, 2011 WL 5330299, at *2 (Bankr. S.D. Cal. Oct. 28, 2011) (citing In re Atkins, 69 F.3d 970 (9th Cir. 1995)).

Yaspan argues the Retainer cannot be disgorged because he holds a security interest in those funds. Disgorgement Opposition at 8. The authority cited by Yaspan, In re Dick Cepek, Inc., 339 B.R. 730, 739 (B.A.P. 9th Cir. 2006), however, is inapplicable in this case. In Dick Cepek, Inc., the court found that prepetition security retainers are not subject to disgorgement "simply to achieve equal distribution among similar creditors under section 726(b)." 339 B.R. at 739. Neither § 726(b) nor equal distribution are at issue here. Rather, the issue is Yaspan's failure to: 1) secure an order authorizing employment before drawing down on the Retainer; and 2) file a fee application.

Further, as the UST highlights in the Employment Objection, Yaspan has not disclosed the source of the $50,000 Retainer. Employment Objection at 2. The Trustee also highlights this issue in the Disgorgement Joinder, citing to emails sent by the Trustee's counsel to Yaspan in July/August 2013, in which the Trustee's counsel asked Yaspan for information regarding the source of the payments, to which Yaspan did not respond. Weiss 9/11/13 Decl. ¶ 5, Ex. C. Although Yaspan filed "Disclosure Compensation" forms in each of the Original GGW Debtors' cases, indicating that the each of the Original GGW Debtors was the source of some amount paid to Yaspan, the UST highlighted in the Employment Objection that GGW Brands, LLC is a holding company. And, the Trustee requested information from Yaspan regarding the actual source of the $50,000 Retainer and Yaspan did not respond. Weiss 9/11/13 Decl. ¶ 5, Ex. C. Disclosure of the "source of . . . compensation" is required by 11 U.S.C. § 329(a). Accordingly, based on Yaspan's failure to disclose the source of the $50,000 Retainer, the Court finds that the Retainer, in its entirety, must be disgorged.

Further, it is uncertain how much of the Retainer Yaspan currently has in his Trust Account. Yaspan has made various, inconsistent representations regarding the amount he has drawn down from the Retainer and the amount

14

remaining in his Trust Account.  The following is a chart of Yaspan's representations concerning the amount of the Retainer that he currently has in his Trust Account:

| Amount Remaining | As of | Source |
|---|---|---|
| $33,913.87 | 2/27/13 | Fee Application at 4, filed 9/11/13. |
| $38,000 (Approximate) | 2/27/13 | Employment Application, Yaspan 3/4/13 Decl. ¶ 8, filed 3/8/13 (indicating that approximately $17,000 +/- remained from the $20,000 paid by GGW Brands, LLC and GGW Direct, LLC, and $2,000 +/- remained from the $5,000 paid by GGW Magazine, LLC and GGW Events, LLC) |
| $33,913.87 | 2/27/13 | Disgorgement Opposition at 4-5, filed 9/27/13 (indicating that $16,086.13 was deducted from the Trust Account) |
| $0 | 7/19/13 | Email dated 7/19/13 from Yaspan to Trustee's counsel stating "[t]here are no funds presently remaining in my possession from the retainer.". Disgorgement Joinder, Weiss 9/11/13 Decl. ¶ 5, Ex. C. |

Yaspan's noncompliance with disclosure requirements continues.  In his 9/27/13 Declaration, Yaspan states that he "provided $16,086.13 in pre-filing services that was concurrently deducted from the deposit leaving $33,913.87."  Yaspan 9/27/13 Decl. ¶ 12.  Nowhere in the Employment Application, the Employment Reply, the Re-Set Motion, the Fee Application, or the Disgorgement Opposition, however, does Yaspan disclose the prepetition work he performed for the Original GGW Debtors.

Yaspan is required by FRBP 2016(a) to fully disclose "what payments have theretofore been made . . . whatsoever in connection with the case."  To date, Yaspan has not submitted any evidence detailing his pre-petition work, including time expended and expenses incurred, and exactly when, and in what amounts, he drew down on the retainer.  See In re Woodcraft Studios, Inc., 464 B.R. 1, 9-10 (N.D. Cal. 2011) (holding that failure to disclose the "full circumstances surrounding [receipt and use of retainer] provided the Bankruptcy Court discretion to deny [all fees], including [the retainer]").  By failing to disclose the details of his prepetition work and providing inconsistent information regarding the amount remaining in his Trust Account, Yaspan has violated the disclosure requirements of FRBP 2016(a).  Therefore, the Court finds he is not entitled to receive any compensation.  See, e.g., In re Woodcraft Studios, Inc., 464 B.R. at 9 (holding that failure to inform a bankruptcy court of an attorney's pre-petition relationship with the debtor and the full circumstances surrounding the attorney's receipt and use of a $5,000 retainer provided the court with discretion to deny the attorney's fees).

Further, Yaspan does not mention that the Retainer was paid the day before, or the same day as, the Original GGW Debtors filed bankruptcy. He must have drawn down from the amount he received from the GGW Entities contemporaneous with or after the Original GGW Debtors filed bankruptcy. He has not, however, filed any disclosure regarding drawing down from the Retainer postpetition, as required by FRBP 2016(a). In re Lewis, 113 F.3d 1040, 1044-1045 (9th Cir. 1997) (disgorging all fees for attorney's failure to file supplemental disclosure statements regarding fee payments).

Alternatively, 11 U.S.C. § 329(b) grants the Court authority to order the return of payments exceeding the reasonable value of the services provided to the estate. Because as analyzed above, the Retainer must be disgorged in its entirety, the Court need not address this issue.

Yaspan's last argument, that his fees should be allowed as administrative expenses under 11 U.S.C. § 503(b)(1)(A), is unpersuasive. Disgorgement Opposition at 8. Section 503(b)(1)(A) allows administrative expenses for "the actual, necessary costs and expenses of preserving the estate, including—(i) wages, salaries, and commissions for services rendered after the commencement of the case . . . " Yaspan cites dicta from Matter of Grabill Corp., 983 F.2d 773, 777 (7th Cir. 1993), a Seventh Circuit decision that discussed the possible applicability of § 503(b)(1)(A) to § 330 in cases where it "would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate and hence on the unsecured creditors seeking to deny him that compensation." Grabill Corp. is an out of circuit decision; neither its holding nor its dicta are controlling on this Court. Yaspan has not cited any controlling authority—and the Court is not aware of any—that allowed attorney's fees as an administrative expense in facts similar to those before the Court. Further, Yaspan has not demonstrated that the fees he incurred were "actual, necessary costs and expenses of preserving the estate." Finally, in the Employment Application, Yaspan indicated that he would seek fees under § 328, and in the Fee Application, seeks fees under § 331.

4.    Fee Application

As discussed above, Yaspan cannot receive compensation for any work performed on behalf of the GGW Entities because he did not obtain a court order authorizing his employment. "As the BAP has previously stated on more than one occasion, court approval of the employment of counsel for a debtor in possession is the sine qua non to counsel getting paid. Failure to obtain court approval of a professional in accordance with § 327 and [FRBP] 2014 precludes the payment of fees." In re Monument Auto Detail, Inc., 226 B.R. 219, 225 (B.A.P. 9th Cir. 1998) (internal citations and emphasis omitted). This includes compensation based on state law theories, such as quantum meruit. Id.

IV.    Conclusion

For the reasons stated above, the Re-Set Motion is DENIED, the Employment
Application is DENIED, the Fee Application is DENIED, and the Disgorgement
Motion is GRANTED.  Pursuant to LBR 9021-1(b)(1)(B), the UST must serve and
lodge a proposed order via LOU within 7 days of the hearing.  <u>Appearances
waived</u>.

If any party wishes to appear regardless of the Court's tentative ruling, that party
must notify counsel for the opposing party of said intent and be prepared to offer
testimony in court regarding the efforts undertaken to notify counsel for the
opposing party of the intended appearance.

17

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **COURT'S TENTATIVE RULING ON MOTIONS REGARDING THE EMPLOYMENT AND FEES OF THE LAW OFFICES OF ROBERT M. YASPAN WHICH WAS ADOPTED AS THE COURT'S FINAL RULING AT THE HEARING** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of 11/14/13, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- **Martin R Barash**    mbarash@ktbslaw.com, lbogdanoff@ktbslaw.com
- **Brendt C Butler**    brendt.butler@gmail.com
- **Anne-Marie J DeBartolomeo**    ajd@girardgibbs.com, jiv@girardgibbs.com,jar@girardgibbs.com
- **Richard K Diamond**    rdiamond@dgdk.com, DanningGill@gmail.com
- **Matthew Heyn**    mheyn@ktbslaw.com
- **Lance N Jurich**    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- **Samuel M Kidder**    skidder@ktbslaw.com
- **Michael D Kolodzi**    mdk@mdklawfirm.com
- **Dare Law**    dare.law@usdoj.gov
- **Dare Law**    dare.law@usdoj.gov
- **John F Medler**    JOHN@MEDLERLAWFIRM.COM, JMEDLER@MEDLERROITHER.COM
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **R. Todd Neilson (TR)**    tneilson@brg-expert.com, sgreenan@brg-expert.com;tneilson@ecf.epiqsystems.com;ntroszak@brg-expert.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- **Robert J Pfister**    rpfister@ktbslaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, nick@ronaldrichards.com
- **Ronald N Richards**    ron@ronaldrichards.com, nick@ronaldrichards.com
- **Steven J Schwartz**    sschwartz@dgdk.com, DanningGill@gmail.com
- **David M Stern**    dstern@ktbslaw.com
- **Ronald D Tym**    RTym@Tymfirm.com
- **Ronald D Tym**    RTym@Tymfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Andy C Warshaw**    awarshaw@lawcenter.com, mstevens@lawcenter.com,intake@lawcenter.com
- **Jonathan M Weiss**    jweiss@ktbslaw.com
- **Jonathan M Weiss**    jweiss@ktbslaw.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

**3.** __TO BE SERVED BY THE LODGING PARTY__: Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below: